**Thomas P. O'MEARA, Respondent,**

**Edward P. Roitenberg, Plaintiff,**

v.

**Floyd OLSON, individually and d.b.a. National Real Estate Traders, Inc., Appellant.**

**Sherman RICHTER, et al., Plaintiffs,**

**National Real Estate Traders, Inc., Appellant,**

v.

**Thomas O'MEARA, et al., defendants and third party plaintiffs, Respondents,**

v.

**MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION, third party defendant, Brandywine II Associates, third party defendant, Respondents.**

**No. C2–87–637.**

Court of Appeals of Minnesota.

Nov. 3, 1987.

Charles T. Nixon, Minneapolis, for Thomas P. O'Meara, respondent, and Thomas O'Meara, et al., defendants and third party plaintiffs.

Dennis J. Holisak, Bloomington, for Floyd Olson, individually and d.b.a. National Real Estate Traders, Inc.

William S. Borchers, Minneapolis, for Midwest Federal Sav. and Loan Ass'n, third party defendant.

John R. Stoebner, Minneapolis, for Brandywine II Associates, third party defendant.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and RANDALL, JJ.

## OPINION

LESLIE, Judge.

Appellants Floyd Olson and National Real Estate Traders sued to enjoin cancellation of a contract for deed by respondents Thomas and Mary Ann O'Meara. The trial court enjoined the cancellation. Following trial on the merits to the court, the temporary restraining order was dissolved, the contract for deed was canceled and appellants were ordered to restore possession of the property to O'Mearas immediately. On appeal, Olson and National Real Estate Traders argue that the O'Mearas could not cancel the contract for deed without giving the notice required by Minn.Stat. § 559.21. They also argue the trial court erred in refusing to grant them additional time to cure the defaults in existence on the contract. Finally, appellants argue that Minn. Stat. § 559.21 has preempted judicial termination of installment land sale contracts. We affirm.

## FACTS

The subject matter of this suit is real estate located at 627 First Avenue North, Minneapolis, Minnesota, on which the Jewelers' Exchange Building is located. The land is owned by an institutional trustee, and the building is the subject of a 100-year ground lease dated May 1, 1909. In

1977, Bradywine II Associates, a limited partnership, had succeeded to the lessee's interest in the lease.

On June 4, 1977, Thomas P. O'Meara and Mary Ann O'Meara (O'Meara) entered into a Contract for Assignment of Lease with Brandywine (the 1977 contract). The 1977 contract provided for the installment sale by Brandywine to O'Meara of the lessee's interest in the ground lease. The 1977 contract also provided that O'Meara had the right to possession of the Jewelers' Exchange Building and the right to take and use the rents, issues and profits from the building unless a default occurred.

On August 23, 1985, O'Meara entered into a Contract For Assignment of Lease (the 1985 contract) with Sherman Richter, Norman Oakvic and Edward P. Roitenberg (ROR Partnership). The 1985 contract provided for the installment sale by O'Meara to ROR of the lessee's interest in the ground lease. Under the 1985 contract, ROR assumed O'Meara's obligations under the 1977 contract. The 1985 contract provided that in the event of default by ROR,

> The said sellers, at their option, by written notice [may] declare this contract canceled and terminated, * * * said notice to be in accordance with the statute in such case made and provided (M.S.A. § 559.21) which statute is incorporated herein by reference and expressly made applicable hereto.

On or about February 28, 1986, ROR and the spouses of Richter and Roitenberg delivered to Evergreen Industrial Park Corporation (Evergreen) their quit claim deeds to the Jewelers' Exchange Building. On May 14, 1986, Evergreen executed and delivered its quit claim deed to the building back to Roitenberg. This deed, recorded on August 6, 1986, showed that less than $1,000 was given as consideration for the deed.

On May 19, 1986, Roitenberg and his spouse executed and delivered two quit claim deeds to the Jewelers' Exchange Building. One of these was to National Real Estate Traders, Inc. (National), a corporation then being formed. National was not incorporated until June 11, 1986. The deed to National was recorded on August 6, 1986, and showed that less than $1,000 consideration was given for the deed.

The second quit claim deed executed by the Roitenbergs was delivered to Floyd Olson, who was acting as a promoter of National. The deed from the Roitenbergs to Olson was not recorded.

Defaults occurred in the 1977 contract and Brandywine served a Notice of Cancellation on O'Meara as required by Minn. Stat. § 559.21, subd. 1c (1986). The defaults specified in the notice were all defaults in obligations expressly assumed by ROR in the 1985 contract.

On or before May 14, 1986, O'Meara commenced proceedings to cancel the 1985 contract. ROR and Evergreen were given the notice required by the contract between May 16 and May 21, 1986. Neither National nor Olson was given any notice of the cancellation. The time for ROR or Evergreen to cure the defaults specified expired July 21, 1986 with no cure made.

At some time between May 20 and June 1, 1986, Thomas M. O'Meara, the agent of his parents, Thomas P. and Mary Ann O'Meara, became aware of a claimed interest by Olson and National in the Jewelers' Exchange Building. Despite Thomas M. O'Meara's actual knowledge of these claims, Olson and National were not given notice. Since National was not incorporated until June 11, 1986, it was not possible to serve notice on the corporation until after that date. In addition, by Order of July 22, 1986, O'Meara was restrained from taking further action to cancel the contract. Service on National was possible during the six-week period between its incorporation and the July 22 restraining order.

National moved to have O'Meara's cancellation by notice declared void. O'Meara answered and, by counterclaim, moved for judicial termination of the 1985 Contract.

On July 22, 1986, the District Court granted ROR and National a temporary restraining order restraining O'Meara's cancellation of the 1985 contract. The July 22 temporary restraining order also required that all rents collected be paid into

court and that O'Meara's action to cancel the 1985 contract be consolidated with an earlier action by O'Meara to prevent waste and dissipation of rents from the property by National and Olson.

The case was tried to the court on October 20–23, 1986. On November 17, 1986, the court ordered the 1985 contract terminated and dissolved the July 22 temporary restraining order. No post-trial motions were made for amended findings, new trial or stay of entry of judgment. By stipulation, all claims against third party defendants Brandywine II Associates and Midwest Federal Savings and Loan were dismissed with prejudice on the merits on November 18, 1986. Neither third party defendant appeared in this appeal.

Since the beginning of the proceedings in July of 1986, there has been no tender or offer of tender of the amounts in default on the contract between O'Meara and appellants. The trial court found that appellants took the May 19, 1986 deed from Roitenberg with full knowledge of the amounts in default by the vendees.

Judgment was entered January 6, 1987, and this appeal followed.

### ISSUES

1. Could the 1985 contract be canceled without notice to Olson or National?

2. Was National entitled to an opportunity to cure its defaults following judicial termination of the 1985 contract?

3. Has Minn.Stat. § 559.21 preempted judicial termination of installment land sale contracts?

### ANALYSIS

Appellants do not contest the trial court's findings of fact. Rather, appellants assert that the findings of fact do not support the conclusions of law.

1. *National's Right to a Notice of Cancellation.*

Appellants claim that the language of the 1985 contract regarding notice of cancellation required O'Meara to cancel the 1985 contract, if at all, by giving the notice provided for by Minn.Stat. § 559.21 (1985).

Appellants argue that the provision expressly limited O'Meara's cancellation rights by contract, and O'Meara should not have been allowed to proceed with the cancellation by judicial action without giving the statutory notice. This argument was recently rejected by this court in dealing with similar language. *McGonagle v. Johnson*, 399 N.W.2d 134 (Minn.Ct.App. 1987), *pet. for rev. denied*, (Minn. March 13, 1987). As the court stated in *McGonagle:*

> The contract does not state that cancellation is respondents' sole and exclusive remedy. The contract merely recites one of the remedial options available in the event of default.

*Id.* at 136.

In this case, as in *McGonagle*, the contract does not state that cancellation by notice is respondent's only remedy. Paragraph 11 of the contract provides that "all remedies of the sellers shall be cumulative." Even the language of the cancellation provision provides only that in the event of default, "the said sellers [may], *at their option*, by written notice declare this contract canceled and terminated * * *" (emphasis added). This optional language makes cancellation by notice a cumulative, rather than exclusive, remedy. *Kirk v. Welch*, 212 Minn. 300, 306, 3 N.W.2d 426, 430 (1942).

Paragraph 7 of the contract cannot be read to require that *any* notice of cancellation must comply with Minn.Stat. § 559.21. Rather, paragraph 7 merely requires that if the respondents cancel pursuant to paragraph 7, they must give the notice required by that paragraph. Since respondents canceled by judicial action and not pursuant to the contract, the notice of cancellation requirement in paragraph 7 does not apply.

2. *National's Right to Redeem Following Judicial Termination of the 1985 Contract.*

Appellants argue they should have been given an opportunity to redeem since the amount due was unliquidated and subject to a bona fide dispute as to its amount. The trial court found, however, that Na-

tional took the deed from Roitenberg with full knowledge of the amounts in default by the vendees. The court further found that O'Meara's Notice of Cancellation specified the amount in default. Finally, O'Meara's counterclaim specified the amounts claimed to be due. Appellants, having conceded the validity of the trial court's findings, cannot now claim that the amount due was subject to a bona fide dispute.

National cites several cases in support of its proposition that it is entitled to an opportunity to redeem. Each case has a common theme, however: the opportunity to redeem must be accompanied by a demonstrated willingness and ability to pay the amount in default. *See Follingstad v. Syverson,* 160 Minn. 307, 200 N.W. 90 (1924); *O'Connor v. Hughes,* 35 Minn. 446, 29 N.W. 152 (1886); *Yoss v. DeFreudenrich,* 6 Minn. 95 (Gil. 45) (1861). In the instant case, the trial court concluded that appellants had demonstrated an unwillingness and inability to pay the amounts in default. The trial court specifically found that National had not performed any of its obligations under the contract, had made no tender of performance, and had not established or claimed that it was ready, willing and able to perform its obligations. At the time of oral arguments in this case, almost 14 months after Olson and National obtained a temporary restraining order blocking O'Meara's cancellation, there had been no tender or offer of tender or attempt to settle by tendering.

■ In denying an opportunity to redeem, the court balanced O'Meara's potential loss of $309,000 equity in the property against any potential harm to National, which had not shown any evidence of a substantial investment in the property. Based on the evidence before it, the court concluded that it would be inequitable to allow National additional time to redeem and cause the loss of O'Meara's investment. This conclusion has ample support in the evidence and is not an abuse of discretion. *See Nelson v. Hanson,* 45 Minn. 543, 48 N.W. 410 (1891); *Yoss,* 6 Minn. at 110 (Gil. 53) (trial court's decision on how much time to allow for redemption following cancellation by judicial action will not be upset absent an abuse of discretion).

### 3. *Preemption by Minn.Stat. § 559.21 of Cancellation By Judicial Action.*

■ It has been the law in Minnesota since 1891 that the cancellation statute provides a statutory remedy in addition to, rather than exclusive of, cancellation by judicial action. *Nelson v. Hanson,* 45 Minn. 543, 48 N.W. 410 (1891); *State Bank of Milan v. Sylte,* 162 Minn. 72, 202 N.W. 70 (1925). The reason for this is obvious: cancellation under the statute is carried out by the action of the vendor. There is no oversight. For this reason, the statute must be strictly followed to afford the vendee protection against arbitrary termination of rights under the contract. *Sylte,* 162 Minn. at 75, 202 N.W. at 71.

Cancellation by judicial action, on the other hand, affords the vendee a full hearing on the merits in open court. If the theory of the appellants were followed, a full hearing on the merits in open court subject to appellate review would be preempted by summary, non-judicial cancellation enforced by the vendor. This would thwart the purpose of the statute—protection of vendees—and lead to an absurd result. *See* Minn.Stat. § 645.17(1) (1944) (a statute should be construed so as to avoid a result that is absurd or unreasonable).

Finally, appellants point out that Minn. Stat. § 559.21 has been the subject of much legislative activity in the last nine years. Between 1913 and 1976, the statute was amended six times. Since 1978, when cancellation by action was last held to be an available remedy in *Flynn v. Sawyer,* 272 N.W.2d 904 (Minn.1978), the statute has been amended six more times. Appellants argue that this recent concern by the Legislature indicates an intent to make the statute the exclusive remedy. This argument is without merit.

The mere fact that a statute has been amended six times does not demonstrate a legislative intent to preempt equitable jurisdiction. As respondent points out, three of the six amendments involved service of notice on the commissioner of revenue,

"sunset" extensions on special homestead notices, and application of the mortgage registration tax.

The content of the amendments is more important than the number of amendments. The amendments dealing with cancellation by notice have tended toward more judicial intervention in the process. In 1980, the legislature added Minn.Stat. § 559.211 which specifically states that, in a cancellation by notice, the courts have jurisdiction to enjoin the cancellation. That section goes on to state:

> The remedies provided in this section are in addition to and do not limit other rights or remedies available to purchasers or vendors of real estate.

Minn.Stat. § 559.211, subd. 2.

Ironically, it was this section that National used to obtain its injunction against O'Meara's cancellation by notice. The language of § 559.211 is clear, and National cannot avoid its application.

### DECISION

Respondents were not contractually obligated to give the notice required by Minn. Stat. § 559.21. The trial court did not abuse its discretion in refusing to allow appellants additional time to cure their defaults. Minn.Stat. § 559.21 has not preempted judicial termination of installment land sale contracts.

Affirmed.