**STEWART TITLE GUARANTY COMPANY, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

**No. A08–429.**

Supreme Court of Minnesota.

Dec. 4, 2008.

Thomas R. Muck, Masha M. Yevzelman, Fredrikson & Byron, Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Kevin J. Rodlund, Assistant Attorney General, St. Paul, MN, for respondent.

## OPINION

MAGNUSON, Chief Justice.

Relator Stewart Title Guaranty Company ("Stewart") challenges the imposition of the Minnesota premium tax, Minn.Stat. § 60A.15 (1998) and Minn.Stat. § 297I.05 (2006), on the portion of premiums paid to its agents and never remitted to Stewart. The Minnesota Tax Court held that Stewart owed premium tax on the full premium paid by the customer, including the portion retained by agents. We affirm the decision of the tax court.

Stewart is a Texas-based title insurance company licensed in Minnesota. Stewart sells title insurance policies through a network of agents located throughout the state. Before issuing title insurance policies, Stewart's agents conduct title searches and examinations to determine if the property is encumbered or subject to any liens. The customer pays for title searches and examinations separately from the insurance premium. If the property appears to be free of liens and encumbrances, agents may issue a policy on behalf of Stewart. If the property is encumbered, the agent must ask Stewart's permission to insure over the encumbrance. In addition to issuing title insurance policies, agents provide other services associated with the closing of real estate transactions, such as holding funds in escrow.

For each insurance policy sold, the agent collects the insurance premium from the customer. The premium is charged as a percentage of the value of the property. The percentage rate must be filed with the Commissioner of Commerce. The agent usually keeps approximately 70 to 80 percent of the total premium. The remaining 20 to 30% is remitted to Stewart. Stewart never directly receives the portion of the premium retained by the agent.

From the years 2000 to 2002, Stewart paid premium tax only on the portion of the premium that was remitted to it by its agents. In 2004, Stewart was audited by the Department of Revenue. The Department of Revenue determined that Stewart owed tax on the entire premium, not just the remitted portion. Stewart appealed to the Commissioner of Revenue and then to the tax court, both of which denied Stewart's appeal and assessed the tax on the full premium. On appeal to this court, Stewart argues that the tax court erred in assessing the premium tax on the full premium.

## I.

When reviewing decisions from the tax court, we must determine if the tax court had jurisdiction, if the tax court's decision was supported by the evidence in conformity with the law, and if the tax court committed any other error of law. Minn.Stat. § 271.10 (2006); *Mayo Collaborative Services, Inc. v. Comm'r of Revenue*, 698 N.W.2d 408, 412 (Minn.2005). Because the parties have stipulated to the underlying facts, we are left to determine the application of the law, which we review de novo. *Mayo*, 698 N.W.2d at 412. We are "not bound by decisions of the tax court, especially in the area of statutory interpretation." *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 765 (Minn.2006).

■ Minnesota Statutes § 60A.15 (1998) governed the premium tax for the 2000 tax year. Section 60A.15, subd. 1(b) taxed all "gross premiums ... received by the insurer ... or by its agents for it...." The statute did not define the term "gross premiums."

■ When interpreting statutes, we attempt to ascertain and give effect to the intent of the legislature. Minn.Stat. § 645.16 (2006). Words and phrases should be interpreted in accordance with their common meaning. Minn.Stat. § 645.08 (2006). "When the language of a statute is plain and unambiguous, that plain language must be followed." *Vlahos v. R & I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 679 (Minn.2004) (citation omitted). Statutes that utilize ambiguous language in imposing a tax should be construed in favor of the taxpayer. *See Piney Ridge Lodge, Inc. v. Comm'r of Revenue*, 718 N.W.2d 861, 864 (Minn.2006).

Stewart contends that the term "gross premiums" includes only the amount of the premium actually remitted to Stewart. Stewart argues that the gross premium tax was only meant to apply to insurance companies, and, therefore, the term "gross premium" should only tax the amount of the premium actually used for the indemnification of risk.

Stewart's proposed definition, however, is more akin to net premiums than gross premiums. When the premium tax statute was originally amended to include the term "gross premiums" in 1907, the Committee of the Whole House specifically changed "net premiums" to "gross premiums." *See* Act of Apr. 23, 1907, ch. 321 § 1, 1907 Minn. Laws 434, 436 (amending Rev. Laws Minn. 1905 § 1625); 1 Journal of House of Representatives, March 1, 1907, p. 501 (35th Minn. Legis. Mar. 1, 1907). At the time, net profits were defined as "the gain ... after deducting sim-ply the losses and expenses of the business." *Black's Law Dictionary* 812 (1st ed. 1891). The term "net premium," therefore, meant the premium after deducting expenses. If we were to adopt Stewart's proposed definition, and only tax Stewart on the portion of the premium actually used for the indemnification of risk without including any additional expenses or payments to agents, the tax would apply to net premiums, rather than gross premiums.

By contrast, the term gross was commonly understood to refer to "absolute or entire." *Black's Law Dictionary* 549 (1st ed. 1891). Therefore, by the plain language of the statute, gross premiums include the entirety of the premium, including the amount retained by Stewart's agents.

Stewart further argues that it cannot be taxed on the full amount of the premium since it never "receives" the retained portion, because the agents collect the premium for themselves. The language of the statute, however, is clear. The statute taxes "gross premiums ... received by the insurer ... or by its agents *for it.* ..." Minn.Stat. § 60A.15 (emphasis added). The agents are selling Stewart's insurance policies and are paid for their work out of the premium proceeds. The premium collected by the agent pays for Stewart's expenses in selling insurance. Without Stewart's involvement, the insurance policy would not be sold. The retained portion is collected by the agent for Stewart. Therefore, for tax year 2000, the entire premium was taxable under Minn.Stat. § 60A.15.

## II.

Stewart also contends that the tax court erred in assessing the premium tax for the 2001 and 2002 tax years. Minnesota Stat-

utes § 60A.15 was repealed in 2000, Act of Apr. 11, 2000, ch. 394, art. 2 § 28, 2000 Minn. Laws 507, 542, and reenacted in amended form as Minn.Stat. § 297I.05 (2006), *Id.*, art. 1, § 2, 2000 Minn. Laws at 508. The new section taxes "gross premiums less return premiums on all direct business received by the insurer or agents of the insurer in Minnesota.... " Minn. Stat. § 297I.05, subd. 1. Section 297I.05 applies to Stewart's filings in the 2001 and 2002 tax years.

In the amended statute, the legislature also included a definition of gross premiums. Minnesota Statutes § 297I.01, subd. 9 (2006) defines gross premiums for title insurance companies as "the charge for title insurance made by a title insurance company or its agents according to the company's rate filing approved by the commissioner of commerce without a deduction for commissions paid to or retained by the agent." The statute further states that gross premiums do "not include any other charge or fee for abstracting, searching, or examining the title, or escrow, closing, or other related services." *Id.* Both parties agree that the legislature did not intend to create any new taxation with the amendment. Rather, the legislature sought to clarify and consolidate existing tax provisions. Act of Apr. 11, 2000, ch. 394, art. 1 § 21, 2000 Minn. Laws 507, 528. *See* Minnesota Department of Revenue, *Insurance Recodification* 1 (2000).

■ Stewart again argues that the statute does not tax the agent-retained portions because the retained portions are not "the charge for title insurance," because that charge includes only the portion of the premium for the indemnification of risk. The statute, however, clearly states that the charge for title insurance is calculated "*according to the company's rate filing* approved by the commissioner of commerce." Minn.Stat. § 297I.01, subd. 9 (emphasis added). Here, Stewart listed

the full amount of the premium in its rate filing with the Commissioner of Commerce, without a deduction for portions retained by agents. Furthermore, as far as the customer is concerned, the entire premium is for title insurance. On the Housing and Urban Development closing statement, provided directly to the customer, Stewart lists the full premium as "title insurance." Accordingly, the full amount of the premium falls within the definition of "gross premiums" provided by the legislature.

Stewart's argument that the amount retained by agents was a "charge or fee for abstracting, searching, or examining the title, or escrow, closing, or other related services" is not persuasive. Stewart concedes that the agents specifically charge the customer additional fees for these enumerated services; therefore, under the plain language of the statute, the fees would not be included in gross premiums. Even if we were to find the terms to be ambiguous, as Stewart suggests, under the rules of statutory interpretation, "general words are construed to be restricted in their meaning by preceding particular words...." Minn.Stat. § 645.08 (2006). Therefore, the term "other related services," as used in Minn.Stat. § 297I.01, subd. 9, means services related to title search or abstract—services that are already separately charged by the agents and not included in the premium paid by the customer.

■ We hold that the premium tax, as codified in sections 60A.15 and 297I.05, applies to the full amount of the premium charged to the customer and filed with the Commissioner of Commerce, without deduction for the portion retained by agents.

Affirmed.