Nancy R. SITEK, Appellant,

v.

Michael STRIKER, Defendant,

Mortgage Electronic Registration System, Inc., intervenor, Respondent.

No. A08–0941.

Court of Appeals of Minnesota.

April 28, 2009.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellant.

Eric G. Nasstrom, Brian M. Sund, Ryan R. Dreyer, Morrison Fenske & Sund, P.A., Minnetonka, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; ROSS, Judge; and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

In 2004, appellant Nancy Sitek, a vendee on a contract for deed, defaulted. Michael Striker, the vendor on the contract for deed, served a notice of cancellation. Approximately one month later, Striker filed for Chapter 7 bankruptcy. Sitek argues that the bankruptcy proceedings voided the notice of cancellation and prejudiced her ability to exercise her statutory rights to cure the default or enjoin cancellation. She also argues that the transaction is an equitable mortgage rather than a contract for deed. Because the district court properly concluded that the contract for deed was cancelled and that the contract for deed was not an equitable mortgage, we affirm.

## FACTS

Pursuant to the terms of a marital dissolution decree in 1998, Nancy Sitek acquired title to property located at 5812 Dale Avenue South in Edina, Minnesota. As of February 2002, the property was subject to a mortgage. Sitek defaulted on her loan obligation, and the lender commenced foreclosure proceedings on the property. Through a series of conveyances, River Run Properties, LLC (River Run) acquired title to the property, and on July 1, 2003, Sitek and River Run executed the contract for deed at issue in this case. Through another series of conveyances, defendant Michael Striker acquired title to the property and succeeded River Run as vendor on the contract for deed. In June 2004, Striker conveyed a mortgage interest to Entrust Mortgage, Inc., which designated Mortgage Electronic Registration System, Inc. (MERS) as the nominee. (MERS serves as a nominee for lenders so that if promissory notes secured by a mortgage are sold, a new assignment is not needed for recording.) Striker defaulted on his obligation to MERS, and in February 2005, MERS commenced foreclosure of the mortgage. MERS purchased the certificate of sale at a sheriff's sale in June 2005. Sitek had received notice of that sale.

On September 6, 2005, Striker served Sitek with a notice of cancellation, alleging that Sitek had failed to make monthly payments since September 2004 and that she owed more than $27,000 in unpaid installments plus late-payment charges. On October 14, 2005, Striker filed for Chapter 7 bankruptcy. The petition identified the property, but did not identify Sitek. On November 1, 2005, Sitek filed the present action to stay cancellation. On November 16, 2005, Striker's attorney recorded the notice of cancellation and affidavits attesting that the default had not been timely cured. On March 9, 2006, the bankruptcy trustee issued a notice of abandonment stating that there was little or no equity in the property and that the bank-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

ruptcy trustee would not be asserting any claims to the property.

On April 17, 2006, the district court ruled that even though the property had been abandoned, Sitek's claim was subject to the automatic stay and that the case would not be reactivated until Striker was discharged from bankruptcy. MERS moved to intervene, representing to the district court that Striker had been discharged from bankruptcy in August 2006. Pursuant to a stipulation by the parties that Striker had been discharged from bankruptcy and that the automatic stay had been lifted, the district court granted MERS's motion to intervene and placed the case on active status. The case was submitted for a bench trial on January 22, 2008, after the parties stipulated to most of the relevant facts. In May 2008, the district court granted judgment to MERS. Sitek appeals.

## ISSUES

I.  Did the district court err in concluding that the contract for deed was cancelled notwithstanding Striker's filing of a bankruptcy petition?

II. Did the district court err in concluding that the arrangement between the parties constituted a contract for deed rather than an equitable mortgage?

## ANALYSIS

### I.  Cancellation of Contract for Deed

■ Sitek argues that Striker's purported cancellation was voided when Striker filed for bankruptcy during the automatic 60–day stay provided by bankruptcy law. Specifically, Sitek argues that she was unable to exercise her rights to prevent cancellation. The district court ruled that (1) the contract for deed was terminated by operation of law due to Sitek's failure to either obtain an order staying cancellation or continue making monthly installment payments, and (2) the contract for deed was terminated judicially on the basis of Sitek's breach of the agreement. When, as here, parties stipulate to the relevant facts, the district court's decision is an application of law, which appellate courts review de novo. *Stewart Title Guar. Co. v. Comm'r of Rev.*, 757 N.W.2d 874, 876 (Minn.2008).

■ Minnesota law provides that if a vendee defaults on a contract for deed, the vendor may cancel the contract if the vendor provides sufficient notice to the vendee:

If a default occurs in the conditions of a contract for the conveyance of real estate . . . that gives the [vendor] a right to terminate it, the [vendor] may terminate the contract by serving upon the [vendee] . . . a notice specifying the conditions in which default has been made. The notice must state that the contract will terminate 60 days . . . after the service of the notice, unless prior to the termination date the [vendee]:

(1) complies with the conditions in default;

(2) makes all payments due and owing to the [vendor] under the contract through the date that payment is made;

(3) pays the costs of service of the notice . . .;

(4) . . . pays two percent of any amount in default at the time of service . . .; and

(5) . . . pays an amount to apply on attorney[ ] fees actually expended or incurred. . . .

Minn.Stat. § 559.21, subd. 2a (2008). If the conditions set forth in the notice are not met, the contract is cancelled. *Id.*, subd. 4(d) (2008). A copy of the notice and affidavit of service along with an affidavit attesting that the conditions have not been

met *"may* be recorded [by the vendor] with the county recorder or registrar of titles, and is prima facie evidence of the facts stated in it." *Id.,* subd. 4(e) (2008) (emphasis added). However, nothing in section 559.21 suggests that filing such notice is required for cancellation of the contract.

Chapter 559 provides vendees to a contract for real estate with a means to temporarily postpone cancellation: "[A]t any time prior to the effective date of termination of the contract," a vendee may request, and a district court may enter, an order temporarily restraining or enjoining further cancellation proceedings. Minn. Stat. § 559.211, subd. 1 (2008). In such an action, the vendee "may plead affirmatively any matter that would constitute a defense to an action to terminate the contract." *Id.; see also Smith v. Spitzenberger,* 363 N.W.2d 470, 472 (Minn.App.1985) ("Under section 559.211 and principles of equity, a trial court may not grant injunctive relief unless an underlying cause of action exists.")

MERS argues that the district court correctly concluded that the contract for deed was cancelled both by service of notice and by judicial termination. Each argument is addressed in turn.

## A. Cancellation by Service of Notice

■ It is undisputed that Striker served Sitek with a notice of cancellation in September 2005. Sitek does not argue on appeal that the notice was deficient, and the record indicates that Sitek did not cure the default. But Sitek argues that cancellation was voided because the automatic stay created by Striker's bankruptcy petition prevented her from exercising her rights under chapter 529 to either cure her default or enjoin cancellation.

Federal law provides that the filing of a bankruptcy petition

operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a) (2006). Under Minnesota law, the statutory stay of commencement of an action "suspend[s] the running of the period of limitation until the [stay] is removed." Minn.Stat. § 541.15(a), (a)(4) (2008). Under federal law, a bankruptcy stay continues "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1) (2006).

Striker served the notice of cancellation on September 6, 2005. Under Minn.Stat. § 559.21, subd. 2a, Sitek had 60 days from that date to enjoin cancellation of the contract for deed, which was a potential "claim against the debtor." 11 U.S.C. § 362(a)(1). When the bankruptcy petition was filed on October 14, 2005, Sitek's ability to commence an action to enjoin cancellation of the contract for deed was temporarily stayed. *See* 11 U.S.C. § 362(a)(1); Minn.Stat. § 541.15(a), (a)(4). But this stay continued only as long as the property was part of the bankruptcy estate. When the bankruptcy trustee abandoned the property on March 9, 2006, the stay was lifted and the period of limitations resumed. *See* 11 U.S.C. § 362(c)(1); Minn.Stat. § 541.15(a), (a)(4). Sitek had approximately 22 days remaining on the 60–day period. But it is undisputed that Sitek did not satisfy the conditions in the notice as provided in Minn.Stat. § 559.21 to prevent cancellation at any time during

the 60–day period or at any time thereafter.

Sitek argues that the mere commencement of bankruptcy proceedings voided the notice of cancellation that had already been served. In *In re Crawley,* the bankruptcy debtors were vendees to a contract for deed. 53 B.R. 40, 41 (Bankr.Minn. 1985). The vendors had served a notice of cancellation prior to the filing of the bankruptcy petition. *Id.* The vendors moved to lift the automatic stay in relation to the property in order to complete the cancellation. *Id.* at 42. The bankruptcy court held that lifting the automatic stay was unnecessary to allow cancellation of the contract because the vendees' time to cure the default, although tolled by 11 U.S.C. § 108, had expired. *Id.* at 42–43. The bankruptcy court explained:

> Once the debtor is served with a contract for deed cancellation, no act remains to be done on the part of the contract for deed vendor who is cancelling the contract except waiting for the time to expire. The debtor may cure the default in the contract and thereby terminate the effect of the cancellation notice. However, no other act is necessary by the contract for deed vendor.... The contract for deed interest of the Debtors was terminated by virtue of the expiration of the appropriate time under M.S.A. § 559.21 and 11 U.S.C. § 108.

*Id.* at 43. Thus, the bankruptcy court concluded that the filing of a bankruptcy petition did not invalidate the cancellation notice served on the debtor-vendee. Although in the present case the bankruptcy debtor is the vendor rather than the vendee, the logic of *Crawley* applies; once Striker served the notice of cancellation, "no act remain[ed] to be done ... except wait[ ] for the time to expire." *Id.*

Sitek makes four other arguments for why cancellation was ineffective. First, she argues that cancellation could not have been effective after the property became part of the bankruptcy estate because the trustee neither accepted nor rejected the contract for deed as required by 11 U.S.C. § 365 of the bankruptcy code. Section 365 provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (2006). "[T]he term 'executory contract' refers to a contract on which some performance remains due on both sides." *All–American Life & Cas. Co. v. Adolphsen* (*In re Adolphsen*), 38 B.R. 780, 780 (D.Minn.1983). For the purposes of bankruptcy law, a contract for deed is a "non-executory contract" because "the contract vendor merely holds title as security for payment, just as a lender holds a note." *Id.* at 780–81. Thus, the contract for deed is not an executory contract, and section 365 does not apply.

Second, Sitek argues that she was prohibited from exercising her rights under section 559.21 because the bankruptcy petition made it impossible to make payments on the contract for deed. However, as set forth above, the bankruptcy proceedings stayed the 60–day period during which Sitek could enjoin cancellation. She was not prohibited from exercising her rights to cure default or enjoin cancellation at any time during the 60–day period before or after the bankruptcy stay was in effect. In support of her argument, Sitek cites *Miller v. Snedeker,* 257 Minn. 204, 101 N.W.2d 213 (1960), where the supreme court stated:

> [T]he right to rescind on the ground of failure of performance belongs to the party who is himself without fault. Even though he has sufficient grounds for rescission, if he has done some act which justifies the other party in refus-

ing or delaying performance, or has failed to perform his own part of the contract, the right to rescind does not exist.

*Id.* at 220, 101 N.W.2d at 225 (emphasis omitted) (quotation omitted). *Miller* is not applicable because there is no evidence in the record that either Striker or MERS has breached their contractual obligations or has taken actions that justified Sitek "refusing or delaying performance." *Id.* (quotation omitted).

■ Third, Sitek argues that she was prejudiced by Striker's failure to disclose the contract for deed in the bankruptcy petition. She argues that if the trustee had been properly notified, the period for curing the default would have been extended under 11 U.S.C. § 108 (2006). But section 108 would not have provided Sitek relief because, by its terms, section 108 only extends periods of limitations for bankruptcy debtors or those who are liable on debts along with the bankruptcy debtors. *See* 11 U.S.C. § 108(b).

■ Finally, Sitek argues that she should not be penalized for her failure to cure the default or make payments during the pendency of the injunction proceedings because it was uncertain whether the contract for deed had, in fact, been cancelled. She argues that the district court was bound to either deem the cancellation proceedings "nugatory" or else find that the contract for deed had been cancelled, and that in either event, tendering payments would have been tantamount to "pouring money down a hole." Sitek overlooks the fact that tendering security for payments on a contract for deed is a *prerequisite* to obtaining a temporary injunction: "Upon a motion for a temporary injunction, the court shall condition the granting of the order either upon the tender to the court or vendor of installments as they become due under the contract or upon the giving

of other security in a sum as the court deems proper." Minn.Stat. § 559.211, subd. 1. If Sitek had concerns about making monthly payments directly to Striker or MERS while the outcome of her claim to enjoin cancellation was pending, she should have sought to tender those payments to the district court as provided in section 559.211.

In sum, the contract for deed was cancelled by operation of section 559.21 because Striker properly served Sitek with a notice of cancellation, and Sitek failed to satisfy the conditions in the notice.

## B. Cancellation by Judicial Termination

■ When MERS intervened and answered Sitek's claim, MERS also brought counterclaims alleging that Sitek had defaulted on the contract for deed and asking the court to declare MERS the title holder. The district court concluded that Sitek had materially breached the agreement and that, in the alternative to cancellation under 559.21, her material breach justified judicial termination of the contract for deed.

■ "It has been the law in Minnesota since 1891 that the cancellation statute provides a statutory remedy in addition to, rather than exclusive of, cancellation by judicial action." *O'Meara v. Olson,* 414 N.W.2d 563, 567 (Minn.App.1987); *see also Kosbau v. Dress,* 400 N.W.2d 106, 108 (Minn.App.1987). In *O'Meara,* this court suggested that the remedy provision in a contract for deed could displace judicial termination, but held that the contract in question did not do so:

[T]he contract does not state that cancellation by notice is respondent's only remedy.... [T]he contract provides that "all remedies of the sellers shall be cumulative." Even the language of the

cancellation provision provides only that in the event of default, "the said sellers [may], *at their option*, by written notice declare this contract canceled and terminated . . . ." (emphasis added). This optional language makes cancellation by notice a cumulative, rather than exclusive, remedy.

414 N.W.2d at 566.

The contract for deed in this case, which, by its terms, binds the signatories' successors in interest, provides that the vendor *may* cancel the contract pursuant to the notice procedures in section 559.21: "Should Purchaser fail to timely perform any of the terms of this contract, Seller *may*, at Seller's option, elect to declare this contract cancelled and terminated by notice to Purchaser in accordance with applicable law." (Emphasis added.) While the contract does not have any reference to the vendor's rights being "cumulative," as did the contract in *O'Meara, id.*, the language, "Seller may, at Seller's option, elect to declare this contract cancelled and terminated by notice" is similar to the language in *O'Meara* in that it does not exclude other remedies such as judicial termination. Consequently, in this case, MERS had a right to seek judicial termination of the contract for deed.

■■■■ "[A] material breach or a substantial failure in performance gives the seller a right to terminate a contract for deed." *Coddon v. Youngkrantz*, 562 N.W.2d 39, 42 (Minn.App.1997), *review denied* (Minn. July 10, 1997). Whether an act or omission constitutes a material breach of a contract is a fact question. *See Cloverdale Foods of Minn., Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 49–50 (Minn.App.1998) (citing *Juvland v. Plaisance*, 255 Minn. 262, 269–70, 96 N.W.2d 537, 542 (1959)). Although Minnesota caselaw has not clearly defined "material breach," *Black's Law Dictionary* defines it

as "[a] breach of contract that is significant enough to permit the aggrieved party to elect to treat the breach as total (rather than partial), thus excusing that party from further performance and affording it the right to sue for damages." *Black's Law Dictionary* 200 (8th ed. 2004).

The parties stipulated, and the district court found, that neither Striker nor MERS had received any payments from Sitek on the contract for deed after September 2004. Furthermore, the parties stipulated, and the district court found, that the balloon payment on the contract for deed, which was due on December 31, 2005, was never made. We note that this court has held that "'delay in a single installment payment is not the type of material breach or substantial failure of performance that cancels a contract for deed.'" *TNT Props., Ltd. v. Tri–Star Developers LLC*, 677 N.W.2d 94, 102 (Minn. App.2004) (quoting *Coddon*, 562 N.W.2d at 43). But there can be little doubt that Sitek's failure to make payments or cure default for more than three years constituted a material breach, which justified the district court's termination of the contract.

■■■■ Sitek makes several other arguments for why the contract for deed could not have been judicially terminated. She asserted at oral argument that MERS did not follow proper procedures for seeking judicial termination, although she did not specify what procedures MERS had failed to observe. A party seeking judicial termination of a contract for deed may do so in a counterclaim. *See O'Meara*, 414 N.W.2d at 565–66. Furthermore, MERS's complaint gave Striker "fair notice . . . of the incident giving rise to the suit with sufficient clarity to disclose the [MERS]'s theory upon which [its] claim for relief [was] based." *Kelly v. Ellefson*, 712 N.W.2d 759, 767 (Minn.2006) (quotation omitted).

Sitek also argues that the district court's order should have stated the terms for redemption. Sitek has not cited, and we have not found, any authority supporting the argument that a vendee to a terminated contract for deed has a right to redeem. Even if such a right existed, no such provision was necessary because Sitek had made no attempt to tender or demonstrate a willingness to tender the arrearages. *See O'Meara*, 414 N.W.2d at 567 (rejecting request to redeem vendee interest in part because vendee had not demonstrated a "willingness and ability to pay the amount in default").

In short, the district court's judicial termination of the contract for deed was not erroneous.

## II. Contract for Deed vs. Equitable Mortgage

Sitek argues that the transaction with River Run was essentially a financing transaction. On this issue, there was conflicting testimony. The district court held that "based upon an examination of the evidence adduced and a determination of the witness's credibility, Plaintiff has failed to establish that the River Run Transaction constituted an equitable mortgage." Appellate courts uphold a district court's findings of fact unless clearly erroneous, giving deference to the district court's opportunity to evaluate witness credibility. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn.2008) (citing Minn. R. Civ. P. 52.01).

Characterizing a transaction as an equitable mortgage rather than a contract for deed has significant benefits for a vendee. *See Fraser v. Fraser*, 702 N.W.2d 283, 288 n. 1 (Minn.App.2005), *review denied* (Minn. Oct. 18, 2005). A mortgagor whose interest is subject to foreclosure has a right to redeem the property within six to 12 months of foreclosure, Minn.Stat. § 580.23, subds. 1, 2 (2008), and is entitled to the proceeds of a foreclosure sale above the amount owed on the property, *Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226, 230 (Minn.1996). By contrast, statutory cancellation of a contract for deed "results in the vendee's forfeiture of all payments made and restoration of full legal and equitable title in the property to the vendor," *id.*, and can be effected in as little as 60 days after notice is served, Minn.Stat. § 559.21, subd. 2a.

The party seeking a declaration of equitable mortgage bears the burden of proof. *Westberg v. Wilson*, 185 Minn. 307, 309, 241 N.W. 315, 316 (1932). "[A] deed absolute in form is presumed to be, and will be treated as, a conveyance unless both parties in fact intended a loan transaction with the deed as security only." *Ministers Life & Cas. Union v. Franklin Park Towers Corp.*, 307 Minn. 134, 137–38, 239 N.W.2d 207, 210 (1976). In order for a transaction to be an equitable mortgage, the plaintiff must demonstrate that both parties intended an equitable mortgage at the time of conveyance. *Id.* at 138, 239 N.W.2d at 210. The parties' intentions are to be ascertained by "the written memorials of the transaction and the attendant facts and circumstances." *Id.; see also Fraser*, 702 N.W.2d at 288 (citing *St. Paul Mercury Indem. Co. v. Lyell*, 216 Minn. 7, 11, 11 N.W.2d 491, 494 (1943)). The absence of the terms "debt," "security," and "mortgage" strongly suggests that the parties did not have a mortgage in mind. *Ministers Life & Cas. Union*, 307 Minn. at 138, 239 N.W.2d at 210 (citing *Westberg*, 185 Minn. at 309, 241 N.W. at 316). An individual's experience in business and real estate transactions reduces the likelihood that one party fraudulently induced another to enter into a mortgage agreement that was labeled as a contract for deed.

*Id.* (citing *Hewitt v. Baker,* 222 Minn. 292, 302, 24 N.W.2d 47, 52 (1946)).

The written agreement signed by Sitek and River Run is labeled "CONTRACT FOR DEED." It refers to the parties throughout as "Purchaser" and "Seller." It does not refer to the arrangement as a "debt," "security," or "mortgage."[1] Sitek testified that she understood the arrangement with River Run to be a mortgage by which River Run would pay off the previous titleholder and finance her reacquisition of the house. However, the district court concluded that "Sitek's background and experience undermine the credibility of her testimony ... that she thought the River Run Transaction was intended to be a mortgage financing." The district court based its credibility determination on the fact that Sitek initially testified that she did not own an interest in investment properties, but changed her testimony and admitted that she owned over 20 properties when confronted with her deposition testimony. The district court also noted that Sitek worked for a real estate company as a bookkeeper and had previous experience refinancing property after foreclosure and purchasing property through contract for deed. Finally, the district court noted the testimony of James Hayden, who brokered the transaction between Sitek and River Run. Hayden testified that he spoke with Sitek on several occasions and explained that the River Run transaction would be a contract for deed and that she never asked about a loan or expressed confusion about the nature of the transaction. Hayden also testified that River Run does not make loans because "they are not lenders. They are real estate invest[ors]."

The evidence supports the district court's conclusion. The document is absolute on its face, and there is no evidence that River Run intended the transaction to be a financing agreement. The district court's credibility determination, which is supported by Sitek's experience with real estate transactions, overcomes her testimony that she believed the transaction to be a loan. Consequently, the district court did not err in declining to characterize the transaction as an equitable mortgage.

## DECISION

The district court did not err when it concluded that (1) the contract for deed was cancelled by operation of the notice of cancellation, and (2) because of material breaches by Sitek, the contract for deed could be judicially terminated. The facts support the district court's conclusion that the transaction with River Run was a contract for deed rather than an equitable mortgage.

**Affirmed.**

---

1. We note that paragraph 13 of the contract provides: "The mortgage registry tax due upon the recording or filing of this contract shall be paid by the party who records or files this contract[.]" In their arguments to this court, however, neither party cited this paragraph or argued that it was significant, perhaps because Minn.Stat. § 287.04 (2008) provides that the mortgage registry tax "does not apply to: ... A contract for the conveyance of any interest in real property, including a contract for deed."