*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2300**

Micke-Pokel Farms TRF,
Respondent,

vs.

Viona Rieden,
Appellant.

**Filed August 25, 2014
Affirmed
Ross, Judge**

Pennington County District Court
File No. 57-CV-12-343

Lawrence A. McDowell, Wurst & McDowell, Ltd., Thief River Falls, Minnesota (for respondent)

Michael L. Jorgenson, Charlson & Jorgenson, P.A., Thief River Falls, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

The seller of more than 200 acres of farmland to a commercial buyer sought to cancel the parties' contract for deed on the eve of the final installment payment because the seller discovered that, very early in the contract period, the buyer breached the

contract by conveying a small part of the land to a third party without the seller's consent. The district court implicitly found that the breach was not material and could not support the seller's claim to cancel the contract. Because the district court's finding is not clearly erroneous, we affirm.

## FACTS

Viona Rieden owned 240 acres of agricultural land in Pennington County until 1996. The land consists mostly of tillable acres but also has a 90,000-square-foot building site that includes a house, a barn, grain bins, a Quonset, and a granary. Rieden sold part of the building site—the part that included the house and barn but not the grain bins, granary, or Quonset—to Ricky and SueAnn Sjulestad in 1996. Rieden continued to own the rest of the land (all the farmland and the part of the building site that included the grain bins, Quonset, and granary), but she decided to sell the farmland in spring 2007. She met with Ron Micke, manager of respondent Micke-Pokel Farms TRF, to negotiate a deal. Micke wanted all the land, including the remaining part of the building site, but Rieden wanted to keep the Quonset for storage. Micke and Rieden agreed that Rieden would sell Micke-Pokel all the land and buildings except the Quonset and its immediately surrounding land. They executed a contract for deed in May 2007.

The contract for deed provided that Micke-Pokel would make a down payment and pay the remaining balance in five equal annual installments due on April 1 each year from 2008 until 2012. The contract for deed also included the following provisions relevant to the current dispute:

3.	DELIVERY OF DEED AND EVIDENCE OF TITLE. Upon Purchaser's prompt and full performance of this contract, Seller shall:

(a)	Execute, acknowledge and deliver to Purchaser a Warranty Deed, in recordable form, conveying marketable title to the Property to Purchaser . . . ;

(b)	Deliver to Purchaser the abstract of title to the Property or, if the title is registered, the owner's duplicate certificate of title.

. . . .

5.	PREPAYMENT. Purchaser shall not have the right to prepay this Contract For Deed, with the exception that Purchaser may prepay a sum equal to $750.00 per acre for the number of acres to be transferred, to obtain a deed in partial performance of this Contract for Deed, of up to 10 acres, without Seller having to provide an updated abstract to said 10 acres, should this occur.

. . . .

16.	DEFAULT. The time of performance by Purchaser of the terms of this contract is an essential part of this contract. Should purchaser fail to timely perform any of the terms of this contract, Seller may, at Seller's option, elect to declare this contract canceled and terminated by notice to Purchaser in accordance with applicable law. . . .

. . . .

19.	ADDITIONAL TERMS.

. . . .

(b)	TRANSFER. Purchasers may not sell, assign, or in any other method transfer their interest in this cont[r]act for deed or the said Property without the written consent of Seller.

After the parties signed the contract, Micke-Pokel made timely payments the next four years.

A 2011 visit ignited this litigation. Rieden was living in Wisconsin when she visited the property in September 2011. The Sjulestads still lived in the house Rieden had sold them. Ricky Sjulestad saw Rieden and asked when she would be ready to sell them the Quonset. Rieden said she was not interested in selling it. Sjulestad tried to persuade Rieden to sell the Quonset to them by telling her that, after all, they already owned all the land surrounding it, including the granary and grain bins. This was the first Rieden had learned that, despite the restriction in paragraph 19 of the contract for deed, Micke-Pokel had sold part of the building-site land to the Sjulestads. She went to the county recorder and confirmed that, in July 2007, Micke-Pokel and the Sjulestads entered into a contract for deed for that part of the property.

Rieden protested to Micke-Pokel owner Alvin Pokel, Jr., that she had not given permission for Micke-Pokel to sell any land and demanded that he terminate the contract with the Sjulestads. Pokel spoke with the Sjulestads, but they were not willing to return the property. Pokel relayed the Sjulestads' response to Rieden, who threatened to cancel her contract with Micke-Pokel.

She did not immediately cancel the contract, however, and, six months later, on March 20, 2012, Micke-Pokel's attorney sent Rieden a letter stating that he was holding the company's final payment and would release it to Rieden when she provided an updated abstract of title and a recordable warranty deed. Rieden's attorney responded that Rieden would not accept any payment and intended to cancel the contract for deed. Rieden also sent Micke-Pokel a mediation notice stating that she intended to foreclose on the property. Micke-Pokel sued Rieden on April 12, 2012, seeking specific performance

4

of the contract for deed. Two months after the parties unsuccessfully attempted mediation, Rieden served Micke-Pokel with a notice of cancelation of the contract for deed on September 7, 2012. The district court temporarily enjoined Rieden from cancelling the contract pending the outcome of Micke-Pokel's suit for specific performance. Micke-Pokel's attorney continued to hold the final payment.

The district court held a bench trial and concluded that Micke-Pokel breached the contract for deed by selling part of the land to the Sjulestads without Rieden's consent. But it also held that Micke-Pokel cured the breach by making all required payments and attempting to tender the final payment to Rieden. The court deemed it inequitable to allow Rieden to retain the payments made by Micke-Pokel and reacquire all the land. It decided that Micke-Pokel is entitled to specific performance of the contract for deed and ordered it to tender the remaining balance to Rieden and ordered Rieden to deliver a recordable warranty deed and abstract of title to Micke-Pokel. Rieden appeals.

## D E C I S I O N

Rieden challenges the district court's invalidation of her notice of cancelation of the contract for deed. We are not persuaded by her arguments.

The parties agree that Micke-Pokel breached paragraph 19(b) of its contract for deed with Rieden by selling the grain buildings to the Sjulestads without Rieden's consent. They dispute only the significance of that breach. Rieden argues that the contract for deed clearly and unambiguously provides that if Micke-Pokel "breached any of the terms of the contract, [she] may cancel the contract for deed." Rieden's reasoning is correct but incomplete. She overlooks the portion of the contract that indicates what she

5

must do to cancel the contract. Under paragraph 16, "Should Purchaser fail to timely perform any of the terms of this contract, Seller may, at Seller's option, elect to declare this contract canceled and terminated by notice to Purchaser *in accordance with applicable law*." (Emphasis added.)

The language "in accordance with applicable law" clarifies that any cancellation is governed by applicable law. The controlling statute provides that a seller may cancel "[i]f a default occurs in the conditions of a contract for the conveyance of real estate . . . that gives the seller a right to terminate it." Minn. Stat. § 559.21, subd. 2a (2012). Only two defaults give rise to the seller's termination right: a material breach or a substantial failure in performance. *Coddon ex rel. Coddon v. Youngkrantz*, 562 N.W.2d 39, 42 (Minn. App. 1997), *review denied* (Minn. July 10, 1997). Because Micke-Pokel breached the contract but did not fail to perform, Rieden has a right to cancel only if Micke-Pokel's breach was material.

Whether an act constitutes a material breach is a fact question. *Sitek v. Striker*, 764 N.W.2d 585, 593 (Minn. App. 2009), *review denied* (Minn. July 22, 2009). Although the district court did not make any express finding about the materiality of Micke-Pokel's breach, Rieden accurately maintains that the court implicitly found the breach immaterial. We review implicit factual findings for clear error. *See Vettleson v. Special Sch. Dist. No. 1*, 361 N.W.2d 425, 428 (Minn. App. 1985).

Caselaw has not expressly defined "material breach." *Sitek*, 764 N.W.2d at 593. Rieden contends that a breach is material if it adversely affects the nonbreaching party. But almost every breach somehow adversely effects the nonbreaching party; and yet not

6

all breaches are material. *BOB Acres, LLC v. Schumacher Farms, LLC*, 797 N.W.2d 723, 728–29 (Minn. App. 2011). "A material breach goes to the root or essence of the contract." *Id.* at 728 (quotation omitted). The essence of a contract for deed is the financial arrangement between the buyer and seller under which the seller effectively lends money to the buyer while maintaining legal title and a security interest for the property's purchase price. *Shields v. Goldetsky (In re Butler)*, 552 N.W.2d 226, 229 (Minn. 1996); *S.R.A., Inc. v. State*, 213 Minn. 487, 495, 7 N.W.2d 484, 488 (1942). Micke-Pokel's breach of the contract's consent clause did not affect its financial arrangement with Rieden to purchase the property. It continued to make timely payments and offered to make its last payment before Rieden served the notice of cancelation.

Rieden does not contend that Micke-Pokel's default was related to the financial arrangement or claim that she would lose any economic value without the cancelation. Instead, she argues only in conclusory fashion that the consent clause was an essential part of the contract. She asserts that Micke-Pokel's breach denied her the "right" to retain as much of her family farm as she could. But she had already agreed to sell the entire original family farm except the Quonset, which, with or without cancelation, she continues to own. At oral argument Rieden's attorney could not identify any material injury resulting from Micke-Pokel's breach. Asked to specify any harm to Rieden, counsel explained only, "[The breach] was material to [Rieden]. She wanted to have a say in how that land was disposed of." But her only right to "a say" in how Micke-Pokel disposed of the land it was purchasing would last only through the contract period; after that, Micke-Pokel was unrestrained by the contract and could sell to any one on any

7

terms. And nothing in the contract conferred on Rieden a right of purchase or of first refusal; it gave her only the right to approve or disapprove of any sale Micke-Pokel proposed during the contract period. Rieden misconstrues that right by suggesting that the contract entitled her to reacquire any part of the property that Micke-Pokel sought to sell.

To determine materiality, the district court had to evaluate the significance of Micke-Pokel's breach at the time Rieden sought to cancel the contract. She discovered Micke-Pokel's breach in September 2011—four and a half years into the five-year contract. Even then, she did not immediately try to cancel the contract. She waited until after the contract's performance period had already expired, after Micke-Pokel had offered to make its final payment as required by the contract, and after Micke-Pokel sued her for specific performance, before she finally attempted to cancel. Perhaps a stronger argument for cancelation would have been available if Rieden had sought it sooner, but by the time she served her cancelation notice, the only performance remaining on the contract was Micke-Pokel's final payment (which it offered to send) and Rieden's delivery of the abstract and deed. Without question, Micke-Pokel had a contractual duty to inform Rieden of its plan to sell a part of the land to the Sjulestads, and, if it had fulfilled that duty, Rieden might have refused to consent to the resale. But denying Rieden the temporary right to prevent that sale was not material to the contract for deed in light of its primary purpose—conveying all the land except the Quonset from Rieden to Micke-Pokel in exchange for timely payments.

By affirming the district court's implicit finding that Micke-Pokel's breach is immaterial, we do not absolve the breach. We merely recognize that the remedy Rieden

8

seeks—cancelation—is unavailable given its untimeliness of the end of the contract term because the breach was, by then, not material. The district court also ruled on an equitable theory that Micke-Pokel is entitled to specific performance. Rieden challenges that ruling, claiming that Micke-Pokel has unclean hands by breaching the consent clause. Having already decided that Rieden is not entitled to cancel the contract, we do not consider the district court's equity holding.

**Affirmed.**