**In re EDINA DEVELOPMENT CORPORATION, Debtor.**

No. 06–42532.

United States Bankruptcy Court, D. Minnesota.

June 8, 2007.

Joel D. Nesset, Henson Efron, Minneapolis, MN, for Debtor.

Michael E. Ridgway, U.S. Trustee Office, Minneapolis, MN, for U.S. Trustee.

## ORDER RE: DEBTOR'S MOTION FOR SANCTIONS ON ALLEGED VIOLATION OF AUTOMATIC STAY

GREGORY F. KISHEL, Chief Judge.

This Chapter 11 case came on before the Court for hearing on the Debtor's motion,

styled as one for the imposition of sanctions in consequence of an alleged violation of the automatic stay. The Debtor appeared by its attorney, Joel D. Nesset. Sam R. Montgomery, the creditor-respondent, appeared by his attorney, Bradley W. Solheim. The following order memorializes the disposition of the issues submitted at the hearing, on the record made by the parties.

## FINDINGS OF FACT

1. The Debtor is a Minnesota corporation engaged in the business of the development of residential real estate. It filed a voluntary petition under Chapter 11 on November 1, 2006. Its case is pending in this Court.

2. On August 9, 2004, the Debtor, as vendee, had entered a contract for deed with David and Yvonne Balder, as vendors, for the purchase of certain real estate, a quarter-quarter section in Benton County, Minnesota.

3. Under the contract for deed, the purchase price for the property was $221,400.00. The price was to be paid via initial cash in the sum of $55,350.00, and monthly payments of $1,660.50 of principal and interest beginning September 9, 2004. The principal balance and any unpaid interest was to balloon via a final payment due on August 9, 2007. The Debtor was also obligated to satisfy all real estate taxes due and payable in 2005 and all subsequent years, by direct payment to Benton County.

4. On August 8, 2006, the Balders assigned their interest as vendors to Sam Montgomery. Via a letter dated September 7, 2006, Thomas W. Larkin, Esq., as counsel for Montgomery, advised the Debtor of the assignment. Larkin also put the Debtor on notice that it was in default under the contract for deed "due to [its] failure to pay required installments of principal and interest and failure to pay property taxes in the amount of $606.79."

5. Montgomery had paid the real estate taxes in the indicated amount, as a prerequisite for his filing of the instrument of assignment in the Benton County land records.

6. On September 13, 2006, a notice of cancellation of contract for deed at Montgomery's instance was delivered to the office of the Minnesota Secretary of State. On September 18, 2006, the Debtor received a copy of the notice of cancellation.

7. Term 2 of the notice of cancellation reads as follows:

The default is as follows:

Purchaser has failed to make monthly payments of principal and interest and has failed to pay real estate taxes. The total default is itemized as follows:

| | |
|---|---|
| Monthly payments 7/9/06–9/9/06: ($1,660.50 × 3 months) | $4,981.50 |
| 2005 Real Estate Taxes: | $ 238.29 |
| 2006 Real Estate Taxes (1st Half): (1st Half Taxes $335; Penalty $33.50) | $ 368.50 |
| Total: | $5,588.29 |

In Term 5, the notice of cancellation included the following relevant language:

*... THE CONTRACT WILL TERMINATE 60 DAYS AFTER ... (SERVICE OF THIS NOTICE UPON YOU) ... UNLESS BEFORE THEN:*

(a) *THE PERSON AUTHORIZED IN THIS NOTICE TO RECEIVE PAYMENTS RECEIVES FROM YOU:*

(1) *THE AMOUNT THIS NOTICE SAYS YOU OWE; PLUS*

(2) *THE COSTS OF SERVICE (TO BE SENT TO YOU); PLUS*

(3) *$500.00 TO APPLY TO ATTORNEYS' FEES ACTUALLY EXPENDED OR INCURRED; PLUS*

(4) *FOR CONTRACTS EXECUTED ON OR AFTER MAY 1, 1980, ANY ADDITIONAL PAYMENTS BECOMING DUE UNDER THE CONTRACT TO THE SELLER AFTER THIS NOTICE WAS SERVED ON YOU; PLUS*

(5) *FOR CONTRACTS ... EXECUTED ON OR AFTER AUGUST 1, 1985, $99.63 (WHICH IS TWO PERCENT OF THE AMOUNT IN DEFAULT AT THE TIME OF SERVICE OTHER THAN THE FINAL BALLOON PAYMENT, ANY TAXES, ASSESSMENTS, MORTGAGES, OR PRIOR CONTRACTS THAT ARE ASSUMED BY YOU) ...*

8. In mid-December, 2006, after the Debtor's Chapter 11 filing, its bankruptcy counsel asked Montgomery's attorney to confirm the full current amount of the Debtor's monetary default and the associated statutory costs for which the Debtor was liable to Montgomery.

9. In a response on behalf of Montgomery, Amanda A. Bloomgren, Esq., advised the Debtor's counsel as follows, via an e-mail message sent and received on December 15, 2006:

To date, the amount to cure would be as follows:

| | | |
|---|---|---|
| $ | 4981.50 | (7/9/06–9/9/06) default payments |
| $ | 238.29 | 2005 taxes |
| $ | 368.50 | 2006 taxes |
| $ | 105.00 | Cost of Service |
| $ | 500 | Statutory attorney's fees |
| $ | 99.63 | 2% on amount in default at time of service |
| $ | 4981.50 | (10/9/06–12/9/06) default payments |
| $11,274.42 | | Amount to cure to date. |

Please note that the amount is subject to change with regards to tax penalties and any additional default payments accruing prior to payment.

10. On the afternoon of December 28, 2006, the Debtor tendered a payment to Montgomery in the amount of $11,274.42, via a counter check drawn on the Debtor's debtor-in-possession account that was delivered via United States Postal Service Express Mail.

11. Under cover of a letter dated January 4, 2007, Bradley W. Solheim, Esq., another attorney in the law firm representing Montgomery, returned the check to the Debtor's counsel. He gave two reasons for Montgomery's refusal "to accept this check":

a. "When a party is in default on a contract for deed, payment must be made in a cashier's check or other certified funds."

b. "Further, the amount of the check was not correct." The only component as to which the Debtor's tender had not matched the amounts in numbers identified by Bloomgren was as to "2006 real property taxes of $375.20 if paid in December 2006 and $385.08 if in January 2006," per Solheim. Solheim did not specify the half of taxes due in 2006 to which he was referring.

Solheim added: "You should note, though it is not a statutory default under the contract for deed cancellation, the June payment of $1,660.50 was returned to you as a partial payment, and as such, remains outstanding." Solheim advised that Montgomery had already filed the notice of cancellation for record, with an affidavit of non-compliance.

12. Via letters dated January 10 and January 11, 2007, the Debtor's bankruptcy counsel challenged Montgomery's legal position on both of the alleged deficiencies in cure. He then offered to pay the $6.70 difference in cure amount that he had calculated from the statements in Solheim's letter, if Montgomery acknowledged the sufficiency of the cure and took action to

undo the effect on record title of the filing of his documents. The Debtor's counsel closed by threatening "to initiate formal proceedings" in the Debtor's bankruptcy case, to redress what he characterized as Montgomery's "willful violation of the automatic stay," if Montgomery did not accept this proffer and comply with this demand.

13. Montgomery and his counsel did not accede to the Debtor's requests. The notice of cancellation remains of record in Benton County.

14. On January 19, 2007, Montgomery paid the real estate taxes due in the second half of 2006, in the amount of $385.08.

## CONCLUSIONS OF LAW

1. The recitations on the face of Montgomery's notice of cancellation of contract for deed were sufficient to put the Debtor on notice of its default.

2. Hence, the service of the notice of cancellation commenced the period during which the Debtor had to cure the specified defaults and to perform all obligations accruing during that cure period, under pain of cancellation of all of its rights as vendee.

3. As a result of the Debtor's bankruptcy filing, the deadline for its cure of default under Montgomery's notice of cancellation was extended to January 2, 2007.

4. Thus, the Debtor's tender of cure on December 28, 2006 was timely.

5. The Debtor's tender of cure on December 28, 2006 was not rendered ineffective by the proffered form of payment, a counter check drawn on the Debtor's debtor-in-possession account.

6. The Debtor's tender of cure on December 28, 2006 was not rendered ineffective by reason of the amount tendered on account of past-due real estate taxes payable in 2006.

7. The Debtor's tender of cure on December 28, 2006 was sufficient, as to all of the other contemporaneous components of its default.

8. The Debtor's tender of cure on December 28, 2006 was thus effective to prevent the termination of its rights as vendee that otherwise would have occurred in consequence of Montgomery's service of the notice of cancellation in September 2006.

9. Montgomery's filing for record of the notice of cancellation and an affidavit of non-compliance was therefore unwarranted and unauthorized under the contract for deed or applicable law.

10. Montgomery is now obligated to correct the record title of the subject real estate, to reflect that the contract for deed was not cancelled under the notice he served on the Debtor in September, 2006.

11. Since the contract for deed was not cancelled, Montgomery's filing of the notice of cancellation and affidavit of non-compliance was an act to obtain possession of property of the bankruptcy estate or to exercise control over property of the bankruptcy estate, i.e., the Debtor's rights as vendee under the contract for deed, in violation of 11 U.S.C. § 362(a)(3).

12. In violating the automatic stay in this case, Montgomery did not act willfully.

13. Hence, it is not warranted to impose any punitive sanction on Montgomery.

14. Under all of the circumstances, the only compensatory relief that is warranted is a correction of the record title, conditioned on the Debtor's renewed tender of the payment proffered on December 28, 2006, corrected for the nominal shortfall of $6.70.

## DISCUSSION

**1. Nominal Theory of Debtor's Motion; Framing of Issues to be Reached, and Relief to be Granted.**

The Debtor's counsel styled this motion as one for relief in consequence of "a will-

ful violation of the automatic stay provided for at 11 U.S.C. § 362," effected by "conduct ... openly hostile to the automatic stay, [that] warrants the imposition of significant sanctions." This was pretty tough talking, raising the specter of a punishable contempt of court.

Later in his initial briefing, the Debtor's counsel acknowledged that precedential authority did not quite recognize the availability of contempt remedies against Montgomery, at least if those were to include purely punitive measures. See In re Just Brakes Corp. Sys., Inc., 108 F.3d 881, 885 (8th Cir.1997) (concluding that "Congress has conferred no power to punish for a violation of [11 U.S.C. § ] 362(a), other than the punitive damage authority in [11 U.S.C. § ] 362(h)"; observing that the right to recover punitive damages under § 362(h) was limited to debtors who were individual persons). He did point out that the Eighth Circuit had countenanced a "broad equitable power" in the bankruptcy court to remedy adverse effects of automatic stay violations, under color of 11 U.S.C. § 362(a), "buttressed by [11 U.S.C.] § 105(a)." Id.

Then, in oral argument, the Debtor's counsel backed off from impugning Montgomery and his attorneys with any sort of malign intent. He now professed to have directed this motion toward an adjudication of the validity of Montgomery's cancellation proceeding, and a clearance of the record title for the property. "If the recording issue [were] taken care of," he stated, any grant of monetary relief or imposition of sanctions could be reserved to another day or a separate proceeding, with the likely outcome of only "a very nominal amount" in an award.

Montgomery's counsel concurred in ratcheting down the rhetoric and in confining the immediate stakes to a determination of the validity of his client's cancellation, as it stood of record.

Doing this would essentially require the granting of a declaratory judgment in the context of a motion brought as a contested matter in a main bankruptcy case. This is arguably contrary to the contemplation of Fed. R. Bankr.P. 7001(9).

However, both parties accept and support this procedure and its format of adjudication to get their dispute resolved. The underlying issue is inherent in the motion and it is essential to its resolution. And, thanks to the lack of controversy on its predicate facts, the issue is readily taken as one of law alone. It would be foolish to elevate the sparse considerations of form so as to deny the motion, even if that were without prejudice to the commencement of an adversary proceeding. Neither certainty nor economy would be served; and, given the status of this real estate, in a troubled market and amidst the Debtor's ongoing effort to survive and reorganize as a going concern, those values must be given primacy. Too, there is a backdrop consideration, the upcoming deadline for a balloon payment from the Debtor if the contract for deed were to be reinstated. Nobody's interests would be served by the complications to emerge from a delay in resolution of these issues past that date.

So the Court will play ball, and will reach the central legal issue.

However, this does not mean that the Debtor should be indulged in prolonging the litigation on the "sanctions" aspect of its motion. Admittedly, the present record contains little going to the nature or amount of a monetary award, and no fine-tuned legal argument beyond the huffing and puffing of the initial brief. Nonetheless, it reflects the essence of the prejudice imposed on the Debtor, if the stay was indeed violated, and it does suggest the form of equitable relief that would be the

remedy principally and almost exclusively warranted by both facts and law. So, this aspect of the Debtor's request will be laid to rest now, as well—even though neither side's attorney got down to the specifics of costs, attorney fees, or (to the extent they could even be awarded under the case law) damages. After this order, all disputes between these parties over the acts and transactions described in the findings will be laid to rest.

## 2. Validity of Montgomery's Effort at Cancellation, as a Matter of State Law.

■ The central issue is whether Montgomery's effort at canceling the Debtor's rights as vendee was effective. This is governed by state law. *Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ Under Minnesota law, the cancellation of a vendee's interest in a contract for deed is in the nature of a statutory strict foreclosure, without possibility of redemption if the vendee's default persists past the period for cure of default. *Mattson v. Greifendorf*, 183 Minn. 580, 237 N.W. 588, 589 (1931); *Dale v. Pushor*, 246 Minn. 254, 75 N.W.2d 595, 598 (1956). *See also In re Butler*, 552 N.W.2d 226, 230 (Minn.1996) (upon vendee's failure to timely cure, "all rights between the parties under a contract for deed are terminated"). To avoid unjust forfeitures, the courts are to strictly construe Minn.Stat. § 559.21, the statute that governs cancellation. *Conley v. Downing*, 321 N.W.2d 36, 39–40 (Minn.1982); *Hoffman v. Halter*, 417 N.W.2d 747, 750 (Minn.Ct.App.1988).

The record at bar presents three subsidiary issues, as to the effectiveness of Montgomery's effort at cancellation.

### a. Sufficiency of the Notice of Cancellation.

■ Minn.Stat. § 559.21 prescribes the form and content of a notice of cancellation of contract for deed, in some detail. As a general precept, the Minnesota state courts require a canceling vendor to "closely adhere" to the statute's requirements for form and content, consistent with the policy of strict construction. *Hoffman v. Halter*, 417 N.W.2d at 750.

■ However, the courts have held that the existence of some discrepancies in a notice of cancellation need not render it "fatally defective" as to its content. Ultimately, the question is whether the vendee was prejudiced by the inaccuracy. *Conley v. Downing*, 321 N.W.2d at 39. The recitation of an incorrect date for the deadline for cure is a "major" discrepancy, which "renders a cancellation notice ineffective." *Karim v. Werner*, 333 N.W.2d 877, 879 (Minn.1983). *See also Conley v. Downing*, 321 N.W.2d at 39. On the other hand, an error in the stated amount of a fee statutorily prescribed as a part of the cure may not render a notice of cancellation fatally defective on its face. *Conley v. Downing*, 321 N.W.2d at 39–40 (statement of vendor's statutorily-recoverable attorney fees in an amount greater than allowable under statute did not render notice of cancellation fatally defective); *Karim v. Werner*, 333 N.W.2d at 879 (ditto); *Valletta v. Recksiedler*, 355 N.W.2d 314, 317 (Minn. Ct.App.1984) (inclusion of costs of service of prior notice of cancellation not so improper as to render current notice fatally defective); *Hjelm v. Bergman*, 275 N.W.2d 568, 571 (Minn.1978) (failure to specify monetary amount in line-entry for costs of service did not render notice defective on face). Misstatements of the amount of monetary default under the terms of a contract for deed—and even omissions of

the amount—have been held not to vitiate a notice of cancellation, on the thought that the "vendee is presumed to know the contract terms and is not prejudiced if the amount is not stated or is stated incorrectly." *Conley v. Downing,* 321 N.W.2d at 39. *See also Hoffman v. Halter,* 417 N.W.2d at 750–751 (failure to note amount of delinquent real estate taxes not fatal to notice of cancellation, as vendees "should be presumed to have known of the real estate taxes owed since they agreed in the contract for deed to pay all such taxes").

■ Here, the notice of cancellation did not recite the fact of an installment of real estate taxes coming due in the second half of 2006, after service of the notice but before the end of the cure period, or the amount of that installment. As a substantive point, Montgomery has argued that this installment of taxes was also an essential element of cure. For Montgomery, the dicey aspect of this substantive argument is that it opened up a potential challenge to the facial content of his notice of cancellation, since neither the imminence of the due date on the second-half obligation nor the amount then to be due were noted on it.

It was not entirely clear from the Debtor's original submission whether it challenged Montgomery's cancellation on the ground of a defect in the form of written notice, as to this potential element of cure. By the time this matter was fully submitted, however, it appeared that the Debtor no longer made an issue of it. That was prudent, given the legal authority just cited. Montgomery's cancellation was not rendered invalid by the omission from his notice of cancellation of any detail on this potential element of cure.[1]

### b. Adequacy of Debtor's Tender of Cure.

As oral argument finally revealed, the real issue is whether the payment that the Debtor tendered on December 28, 2006 was legally adequate to cure the defaults identified by Montgomery's notice of cancellation. This raises two component sub-issues.

### i. Debtor's Non–Payment of Real Estate Taxes Due in Second Half of 2006.

Tracking as it did the breakdown originally specified by Bloomgren in mid-December, 2006, the payment tendered on December 28, 2006 did not include any component attributable to the real estate taxes on the property that came due in the second half of 2006, after service of the notice of cancellation but before the end of the cure period. The Debtor did not pay these taxes directly to Benton County either, timely or otherwise.

---

1. One other potential element of default was outstanding as of late December, 2006, the payment of principal and interest for the month of June, 2006 as described in Solheim's letter of January 4, 2007. However, Solheim's statement in that letter that this "was not a statutory default under the contract for deed cancellation" evidences Montgomery's waiver of his right to maintain that the Debtor was then in default on account of this event, insofar as this cancellation proceeding was concerned. Over the course of the parties' wrangling, Montgomery's counsel tried to have this point both ways. He argued in response to the Debtor's motion that the unpaid installment of principal and interest originally due in June, 2006 was a further failure at cure, because this event of default was also implicit in the September, 2006 notice of cancellation due to the presumption of knowledge under *Conley v. Downing.* However, given the lack of any line-entry for this installment in a notice of cancellation otherwise precise, and the undeniable concession in the January 4 letter, neither Montgomery nor his attorney will be allowed to do an about-face from the original omission or the clear waiver of all arguments that would get around the omission.

Montgomery argues that this was a separate element of cure required under his notice of cancellation, which the Debtor failed to meet. Thus, as he would have it, the cancellation was effective on account of this item alone.[2]

■■■ Minn.Stat. § 559.21 does allow a canceling vendor to require performance of an after-maturing obligation of the vendee, as an aspect of cure necessary to avoid cancellation. However, the plain language of the statute does not mandate performance of *this particular kind of obligation* as it matures after the service of a notice of cancellation. It only requires remediation of all events of default identified in the notice plus the making of "all payments due and owing *to the seller* under the contract through the date that [the cure] payment is made."[3]

The contract for deed here provides that the Debtor "shall pay, before penalty accrues, all real estate taxes assessed against the Property which are due and payable in the year 2005 and in all subsequent years." This language requires the payment of real estate taxes, as due, on an ongoing basis. However, it says nothing about the Debtor making payment on account of this obligation to the vendee, with the vendee

then paying the county. The only reasonable construction (and that universally contemplated in performance under the unaltered language of the form of contract for deed used in Minnesota) is that the Debtor was to make payment directly to Benton County.

As such, this is not an after-maturing obligation of the Debtor to make payment "to the seller," performance of which would be a mandatory component of cure under Montgomery's notice. Thus, even though the Debtor did not pay the taxes that came due in the second half of 2006, and did not include an amount equating to this obligation in the payment it tendered to Montgomery on December 28, 2006, this did not result in a failure of cure. Its rights as vendee were not terminated on account of this factor.

### ii. Debtor's Tender of Cure Via "Counter Check."

■■■ When the Debtor tendered cure, it did so in the form of a "counter check" drawn on its debtor-in-possession checking account. After the end of the Debtor's cure period, Montgomery, through Solheim, rejected this tender due to its form, maintaining that "payment [had to] be made in a cashier's check or other certified funds."

---

**2.** The articulation of Montgomery's position on the issue of the 2006 taxes has been inconsistent and confusing throughout the parties' wrangling. Through and including the communication from Bloomgren, the formal notice to the Debtor demanded a cure on taxes only for those due in the first half. As to this item, the Debtor's tender matched that demand. Solheim's January 4, 2007 letter was obviously a reference to taxes due for only one half in 2006; but he failed to identify the half he was referring to. The amount, though it was discrepant from that identified by Bloomgren, suggests a continuing reference to the first half, augmented by further accrual of penalties. It was not until Montgomery's responsive briefing for this motion that his attorneys explicitly raised the additional contention, that payment of the taxes due in the

second half was a necessary element of cure due to their ripening during the cure period. (And, apparently, the discrepancies from the principal amount of the installment were late-payment penalties assessable on that second half.) This does not remedy the inconsistency in Solheim's January 4 letter—i.e., why he did not state a doubled amount, plus penalty, accounting for the full year, if that was his client's contemporaneous position. The reversal or augmentation of position on this point is troubling as well. But because the Debtor chose to address the merits of Montgomery's claim of default on the later-maturing taxes for the second half, side-tracking to a waiver or estoppel analysis is not necessary.

**3.** The emphasis is added.

Montgomery's attorneys insist that "contract for deed vendors only accept certified funds to cure a default," under some sort of recognized "standard of care" allegedly prevailing in Minnesota. They also assert that a "standard of care" applicable to anyone dealing with a debtor-in-possession in bankruptcy under these circumstances would not countenance accepting a "counter check," i.e., a negotiable instrument issued on a debtor-in-possession checking account. They purport to prove this via the affidavit of another Minnesota attorney, a long-time practitioner in real estate transactions familiar with the use of contracts for deed as a financing device. That attorney attests to his "experience that certified funds are required for cure under a Notice of Cancellation," and that he "would never counsel a Contract for Deed Seller to accept a personal check to cure a Notice of Cancellation from a vendee who has filed for relief under the Bankruptcy Code."

■ This is all very well and good as a statement of personal preference or opinion. But the fact remains that Minn.Stat. § 559.21 neither prohibits a cure payment via personal check, nor requires it to be made in certified funds. Beyond that, the Minnesota Supreme Court has expressly held that, in the absence of actual prejudice to a canceling vendor, a tender of cure in the form of a personal check is not per se impermissible. *Southgate, Inc. v. Ecklin*, 296 Minn. 502, 207 N.W.2d 729, 730 (1973). (The most obvious prejudice, of course, would be a subsequent dishonor of the check. But in that instance there would be a failure of actual cure, there being no transfer of value until a tendered check is actually honored,[4] so cancellation would have actually been effected at the close of the cure period even if that result might not become evident until a check was dishonored later. *See Henschke v. Young*, 224 Minn. 339, 28 N.W.2d 766, 769 (1947)).

The Debtor here has shown by uncontroverted evidence that Montgomery would have suffered no prejudice had he accepted its check in cure; during the relevant period, its debtor-in-possession account had held enough funds to allow its bank to honor the check upon presentment, throughout that time.

So, the Debtor's tender of cure was not rendered ineffective by the form of payment it used.[5]

### c. Result, as to Viability of Montgomery's Attempted Cancellation.

While Montgomery's notice of cancellation was adequate to commence the cancellation process, his refusal of the Debtor's form of tender was not legally justified and the Debtor was not legally required to pay the taxes due for the second half of 2006 as an element of cure under the notice of cancellation. In all other respects, the amount of the tendered payment matched the defaults identified in the notice of cancellation, as reprised by Bloomgren, in-

---

**4.** *See In re Pyatt*, 486 F.3d 423, 426–27 (8th Cir.2007) (under Uniform Commercial Code, transfer of funds identified to a check occurs when check is honored).

**5.** Had Montgomery really wished to hold the Debtor to an obligation of payment in certified funds, he could have specified so in the notice of cancellation; or, he would have made demand on December 28 for a retender in that form. The latter would have required

him to grant the Debtor "an extension of time reasonably necessary to procure such tender," however. *Southgate, Inc. v. Ecklin*, 207 N.W.2d at 730. In light of this pronouncement in *Ecklin*—which is binding precedent—the fact that Montgomery and his attorneys did neither of these things, and then hardnosed the Debtor on the issue after the end of the cure period, smacks of sandbagging.

cluding the amount identified to taxes due in the first half of 2006. The Debtor's proffer of cure was timely. *In re Maanum*, 828 F.2d 459, 460 (8th Cir.1987) (11 U.S.C. § 108(b) extends unexpired period for cure of default in cancellation of contract for deed under Minnesota law, to date sixty days after Chapter 11 filing of debtor-vendor).

Thus, the Debtor is entitled to the equitable relief it has requested, an adjudication that its rights as vendee were not cancelled and a directive to Montgomery to remedy the defect in record title brought about by the filing of his notice of cancellation and affidavit of non-compliance. To ensure a return to the status quo, however, Montgomery's obligation to do that will be conditioned on the Debtor's renewed tender of the amounts previously advanced in cure under the notice of cancellation. To the extent that the Debtor does not reimburse Montgomery for the amounts he advanced to pay the second half of taxes when due, that will be an event of default that could support the service of another notice of cancellation— as would any other payment or performance defaults that have occurred since the end of December, 2006. The Debtor, of course, should act promptly to make Montgomery whole for them.[6]

■ Given the Debtor's counsel's acknowledgment in oral argument, that he did "not believe there was egregious misconduct here," and with all of the circumstances as they were, the Eighth Circuit's ruling in *Just Brakes* supports that relief and no more. The technical violation of the automatic stay in bankruptcy was accomplished through the continuation of a hard-headed but non-malicious effort to cancel the estate's equitable interest in this real estate. Since it was no more than a technical violation, it does not merit anything more than a return to the *status quo ante* Montgomery's recording of the evidence of his purported but ineffective cancellation.

## ORDER

IT IS THEREFORE ORDERED:

1. The Debtor shall tender to Sam R. Montgomery a sum equal to that which it tendered on December 28, 2006, which may be done via a check on its debtor-in-possession account as long as that account will contain sufficient funds to permit the honoring of that check when and as the check is reasonably presented for payment.

2. Upon the honoring of the check, the Debtor will be deemed to have cured the defaults on which Montgomery premised the notice of cancellation of contract for deed that he served on the Debtor in September, 2006.

3. Within three days after the honoring of the check, Sam R. Montgomery, through counsel, shall take all steps necessary under Minnesota law to undo the effect on the record title of the subject real estate and on the marketability of the Debtor's interest as vendee in that real estate, that was effected by the recording of his notice of cancellation and affidavit of noncompliance. Montgomery shall do so by executing and recording (at his expense) all instruments or documents necessary to accomplish that.

4. The Debtor's motion for any other relief against Montgomery, including the imposition of any sanction on him or an

---

**6.** Montgomery's ability to initiate a new cancellation is subject to the automatic stay at this time.

award of attorney fees or costs against him, is denied.