**In re Emory R. WOFFORD and Jill A. Wofford, Debtors.**

**No. 10–12848–13.**

United States Bankruptcy Court, W.D. Wisconsin.

May 23, 2011.

Joseph A, Skokan, Piletich & Skokan, P.A., Stillwater, MN, for Debtors.

Scott D. Nabke, Blommer Peterman, S.C., Brookfield, WI, for Creditor Bank of America, N.A.

*DECISION AND ORDER*

THOMAS S. UTSCHIG, Bankruptcy Judge.

On April 12, 2011, Bank of America, N.A., filed a motion requesting that the

Court enter an order approving a loan modification agreement between the debtors and Bank of America, N.A., with respect to property owned by the debtors at 412 3rd Avenue, Osceola, Wisconsin. The loan modification is dated September 11, 2010 (and was signed by one of the debtors on September 24). It describes an "unpaid principal balance" of $165,975.82 and indicates that the borrower (identified as Jill Wofford) promises to pay that balance, plus interest (initially at 2% per year but increasing each year to a maximum of 5% in 2013). While it is signed by Jill Wofford, the copy of the agreement attached to the motion does not appear to have been executed by the creditor. The question for the Court is whether an order approving the agreement is necessary, or even appropriate.

This is a chapter 13 case. The debtors proposed a plan and the Court entered an order confirming it in February. In their plan, the only reference to a home mortgage was in paragraph 6, in which they indicated that they would make direct payments to the Bank of New York Mellon in the amount of $137,962.00 to be paid at an interest rate of 7%. The monthly payments on the loan, which was secured by the Osceola residence, were to be $1,260.00. The plan further provided that the bank's claim included a delinquent amount and that the bank "shall incorporate the delinquency into a modification of the loan secured by the mortgage and shall treat that loan as current as of the effective date of the modification." *See* paragraph 13 of the

debtor's amended chapter 13 plan (filed on February 15, 2011, and confirmed by order dated February 28, 2011).

The claims register indicates that The Bank of New York Mellon filed a proof of claim on January 4, 2011. In it, the bank alleged an arrearage claim of $24,738.45 and a total indebtedness of $151,502.87. The proof of claim indicates that notices should be sent to BAC Home Loan Servicing, LP. Notably, no proof of claim was filed by Bank of America, N.A., nor was any documentation supplied regarding the transfer of the claim.[1] Neither the mortgage modification agreement nor the motion clearly articulate the ownership history of the loan. Further, the Court notes that the loan modification agreement attached to the motion is between BAC Home Loans Servicing, LP, and Jill Wofford alone. There is no reference to Emory Wofford, although the motion requests that the Court approve the agreement as between the debtors (plural) and Bank of America, N.A., not BAC Home Loans Servicing, LP, the entity identified as the "lender" in the agreement. The modification agreement also references different terms than those contained in the debtors' chapter 13 plan. For example, the agreement provides that the amount of the bank's claim is $165,975.82 and that it will accrue interest on a modified schedule (starting at 2% and gradually increasing to 5%). The plan referenced a home mortgage of $137,962.00 and an interest rate of 7%, along with an arrearage claim of $24,738.45.[2]

---

1. Attached to the proof of claim was an assignment of mortgage by the Mortgage Electronic Registration Systems, Inc. (MERS), *to* The Bank of New York Mellon. A review of the documents attached to the Bank of New York Mellon claim indicates that the mortgage was originally executed in favor of a lender named Full Spectrum Lending, Inc., by Jill Ellingsworth, a single woman—Mrs.

Wofford prior to her marriage. There was also a copy of a 2008 loan modification agreement between Jill Ellingsworth and "Countrywide," presumably a reference to Countrywide Financial Corp. or one of its subsidiaries, all of which are now subsidiaries of Bank of America Corporation. The 2010 mortgage modification agreement makes no reference to any of this.

■ Under 11 U.S.C. § 1322(b)(2), a chapter 13 plan may not modify the rights of the holder of a secured claim which is "secured only by a security interest in real property that is the debtor's principal residence." This anti-modification provision precludes debtors from proposing plan provisions which would unilaterally rewrite the terms of a home loan—for example, by reducing the principal balance to the current value of the home, lowering the interest rate, or providing for a new amortization schedule. But the fact that a debtor cannot propose a plan which modifies the bank's claim does not mean that the parties cannot agree to new terms. *See* 11 U.S.C. § 1325(a)(5)(A) (one of three options for confirmation with respect to an allowed secured claim is that "the holder of such claim has accepted the plan"); *In re Smith,* 409 B.R. 1, 4 (Bankr.D.N.H. 2009) ("[N]othing prevents a secured creditor from consenting to the modification of its claim"); *Flynn v. Bankowski (In re Flynn),* 402 B.R. 437, 443 (1st Cir. BAP 2009) (plan that did not satisfy requirements of code could be confirmed if secured creditor has accepted the plan).

■ The precise mechanics of how such an agreement may be memorialized (especially in the context of a request for court approval) is open to some discussion. In *Smith,* the court noted that a loan modification *could* be reviewed (and approved) by a court in the context of plan confirmation, or as a resolution of an actual dispute (such as a motion for relief from the stay). 409 B.R. at 4. At the same time, there does not appear to be any applicable law or rule that *requires* judicial approval of the terms of the loan modification itself. *Id.* at 3. Admittedly, other courts have considered a loan modification agreement to be a reaffirmation agreement. *See In re Roderick,* 425 B.R. 556, 563 (Bankr.E.D.Cal.2010) ("A mortgage modification appears to be a reaffirmation agreement to the extent that it affects a debtor's personal liability. There is no sound basis to distinguish mortgage modifications from other negotiated reaffirmation agreements."); *In re Pope,* No. 10–19688, 2011 WL 671972, at *1 (Bankr.E.D.Va. Feb.17, 2011) ("After the parties have come to an agreement on the loan modification, the modified loan may be approved by the court through a reaffirmation agreement.").

■ Whether the mortgage modification should be regarded as a reaffirmation agreement is not an issue presently before the Court.[3] But if it were, the Court would not enter an order approving it. It has long been this Court's interpretation of 11 U.S.C. §§ 524(c)(6) and 524(d) that unless the Court schedules a discharge hearing, reaffirmation agreements secured by real property do not require either a hearing or court approval. As provided in the disclosures which debtors are statutorily required to receive from the creditor in connection with a reaffirmation agreement, court approval is not required if the obligation is secured by real property. *See* 11 U.S.C. § 524(k)(3)(J)(i)(7). Further, 11 U.S.C. § 524(d) provides that the court "may" hold a discharge hearing at which the debtor shall appear in person; the section goes on to indicate that if a discharge has been granted at such a hearing, the court must inform the debtor of the legal effect and consequences of a reaffirmation agreement. This Court does not hold discharge hearings. Put simply, if the agreement relates to real property, "no

---

**2.** This totals $162,700.45.

**3.** As this is a chapter 13 case, the debtors' ongoing liability for debt is defined by the terms of their plan.

court approval necessary, no hearing necessary." *See In re Pham,* Case No. 06-20779, slip op. at 16 (Bankr.E.D.Wis. May 31, 2006).

As indicated, absent the creditor's agreement the debtor cannot obtain confirmation of a chapter 13 plan which proposes to modify a claim secured by the debtor's principal residence. If the creditor opts to agree to different treatment, it is certainly free to do so. In that regard, if a mortgage modification agreement is incorporated into the debtors' plan and serves as a part of the "new contract" that a confirmed plan otherwise constitutes between the debtors and their creditors, the Court might approve it as part of the confirmation process.[4] In addition, if a debtor moves to modify a plan after confirmation under § 1329 and incorporates a mortgage modification into that request, approval might be appropriate. *Smith,* 409 B.R. at 5.[5] But as a stand-alone motion, a request to approve a loan modification "does not present the Court with any case or controversy" and essentially constitutes a petition for an advisory opinion or comfort order. *Id.*[6]

In support of its motion, the creditor does not reference any statutory provision which mandates approval of a creditor's voluntary modification of a home mortgage which is otherwise shielded by the anti-

modification provisions of § 1322(b)(2). Certainly there are instances in which the Court may review a chapter 13 debtor's financial obligations, but there is no indication that the modification agreement involves the extension of new credit or the transfer of an interest in the debtor's property, two situations which could require court approval. Instead, there appears little reason—save to give comfort to creditors who wish their documents to receive a judicial stamp of approval—for the Court to "approve" a mortgage modification in the context presented by the bank's motion.

Accordingly,

IT IS ORDERED that the bank's motion to approve the loan modification is denied. Nothing in this order shall be construed as a determination as to the validity of the underlying agreement.

---

4. Here the confirmed plan indicates that a modification agreement would be forthcoming, but the agreement was not specifically incorporated into the plan. Further, the actual agreement submitted to the Court varies from the plan in a number of significant respects (all of which were previously outlined in this order). As such, it cannot be deemed approved as "part" of the previously confirmed plan.

5. Modification of the plan after confirmation is appropriate when the debtor seeks to do such things as increase or reduce the amount

of payments or extend or reduce the time for payments. *See* § 1329(a). A loan modification may have an impact on the plan payments and thus justify a request for plan modification.

6. As noted in *Smith,* court approval of a loan modification is only appropriate when it is presented "in connection with the need for the bankruptcy court to resolve a dispute or take action otherwise *required* under the Bankruptcy Code." 409 B.R. at 4 (emphasis added).