In re Laurie K. HAAKE, Debtor.

No. 12–11398–11.

United States Bankruptcy Court,
W.D. Wisconsin.

Sept. 18, 2012.

Galen W. Pittman, Esq., Galen W. Pittman, S.C., La Crosse, WI, for Debtor.

David B. Russell, Esq., Hale, Skemp, Hanson, Skemp & Sleik, La Crosse, WI, for Creditor Gary Rasmussen.

## ORDER

THOMAS S. UTSCHIG, Bankruptcy Judge.

Laurie Haake, the debtor in this case, has her principal place of business in Wisconsin but lives in Minnesota.[1] She was unable to obtain a traditional mortgage and financed the purchase of her home from the creditor, Gary Rasmussen, through the use of a contract for deed (or a land contract, as it is called in Wisconsin). She testified that she had been renting the home for some time before deciding to purchase it. She tried to get a loan from Park Bank, the lender which financed her business (a "dog center" located in La Crosse, Wisconsin), but was unsuccessful. She and Mr. Rasmussen therefore opted to pursue an alternate form of financing on their own. *See Shields v. Goldetsky (In re Butler),* 552 N.W.2d 226, 229 (Minn.1996) (a contract for deed is a financing arrangement for a real estate sale in which the buyer "has all the incidents of ownership except legal title" and the buyer effectively borrows the money for the purchase from the seller).

The contract for deed was executed in September of 2010. The purchase price for the property was $152,000.00.[2] Ms. Haake made a $20,000.00 down payment. The contract contemplated that Ms. Haake would make monthly payments and that the balance would be due in full on September 1, 2011. It appears she made some, but not all, of the monthly payments and did not pay the balance when it came due. On March 12, 2012, Mr. Rasmussen served her with a notice of cancellation of the contract of deed. This case was filed two days later.

A little over two months after the petition was filed, Mr. Rasmussen filed a motion for relief from the automatic stay. He requests that he be permitted to finalize the cancellation of the contract for deed as necessary in Minnesota state court. The debtor objected to the motion and has made an offer of adequate protection (pending confirmation of a plan, she has offered to make monthly payments consisting of interest on the principal balance and a prorated portion of the accruing real estate taxes).

The Court conducted a hearing on the matter on August 28, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), and the Court has jurisdiction under 28 U.S.C. § 1334. This order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052, as applicable in a contested matter under Fed. R. Bankr.P. 9014(c). The essential issue before the Court is whether the debtor has an interest in the property which is sufficient to permit her to reorganize or restructure the debt in a chapter 11 plan. Ms. Haake contends that the buyer under a contract for deed should be regarded as holding redemption rights analogous to those of a debtor under a traditional mortgage. In contrast, Mr. Rasmussen contends that her rights to the property have terminated and there is nothing for her to reorganize.

 Property interests are created and defined by state law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be

---

**1.** Even though she is a Minnesota resident, Ms. Haake filed for bankruptcy in Wisconsin pursuant to 28 U.S.C. § 1408(1), which provides that a bankruptcy case may be filed in the district in which the "principal place of business" or "principal assets" of the debtor are located.

**2.** *See* Creditor's Exhibit # 2.

analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *see also Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2616, 180 L.Ed.2d 475 (2011). Although this case was filed in Wisconsin, the property is located in Minnesota, the debtor is a Minnesota resident, and the contract for deed was executed and recorded in Minnesota. The rights of the parties under the contract are determined and controlled by Minnesota law, and Ms. Haake's interest in the property must be defined by reference to the substantive law of the state of Minnesota. *In re Edina Dev. Corp.*, 370 B.R. 894, 900 (Bankr.D.Minn.2007) (determination as to whether debtor's interest under contract for deed had been properly canceled was governed by Minnesota law); *see also In re Sumpter*, 171 B.R. 835, 842 (Bankr.N.D.Ill.1994) (Illinois law controlled determination as to whether the debtors had any remaining legal or equitable interest in property when the property was located in Illinois, the agreement was made in Illinois, and the parties were residents of that state).[3]

 Under Minnesota law, the vendee under a contract for deed holds equitable title to the property, while the vendor retains the legal title as security for the purchase price. *Butler*, 552 N.W.2d at 229. One of the remedies available to a vendor in the event of the purchaser's default is the ability to cancel the contract pursuant to Minn.Stat. § 559.21, a process

which is "in the nature of a statutory strict foreclosure." *Id.* at 230. As the *Butler* court observed:

> A statutory cancellation of a contract for deed results in the vendee's forfeiture of all payments made and restoration of full legal and equitable title in the property to the vendor. This result is different from that in a mortgage foreclosure sale, where the defaulting party may receive proceeds of a mortgage foreclosure sale above the amount owed on the property.

*Id.*

 Once the statutory notice has been served and cancellation effected, all rights between the parties under a contract for deed are terminated. *Id.; see also West v. Walker*, 181 Minn. 169, 231 N.W. 826, 827 (1930) (once cancellation is completed, "there remains to neither vendee nor vendor any cause of action against the other growing out of the land transaction"). Given that the cancellation of a vendee's interest in a contract for deed is in the nature of a strict foreclosure, there is no possibility of redemption if the vendee's default "persists past the period for cure of default." *Edina Development*, 370 B.R. at 900.

The notice of cancellation of the contract for deed in this case indicated that the default consisted of Ms. Haake's failure to pay "all outstanding principal and interest" that was due on September 1, 2011. This

---

**3.** Not to belabor the point, but in the context of determining claims and property interests, the bankruptcy court is obligated to utilize choice of laws principles to determine which state's substantive law to apply. Whether one applies "federal common law" or the rules of the forum state, in this case the result is the same: Minnesota law controls the outcome. *See generally Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc. (In re Vortex Fishing Sys. Inc.)*, 277 F.3d 1057 (9th Cir.2002); *Mandalay Resort Group v. Miller (In re Miller)*, 292 B.R. 409 (9th Cir. BAP 2003); *Amtech Lighting Servs. v. Payless Cashways, Inc. (In re Payless Cashways)*, 203 F.3d 1081 (8th Cir. 2000): *Bianco v. Erkins (In re Gaston & Snow)*, 243 F.3d 599 (2d Cir.2001); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385 (7th Cir.2002): *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, 290 Wis.2d 642, 714 N.W.2d 568 (2006); *Cowley v. Abbott Labs.*, 476 F.Supp.2d 1053 (W.D.Wis.2007); *Restatement (Second) of Conflict of Laws* § 188(3) (1971).

totaled $130,971.34. The notice also indicated that she had not paid the 2011 real estate taxes. In accordance with Minn. Stat. § 559.21, Ms. Haake was notified that the contract would terminate 60 days after service upon her unless she paid the amount due, together with the costs of service and $250.00 in attorneys' fees.

■■■■ Minnesota courts strictly construe the notice statute so as to avoid unnecessary forfeitures. *Hoffman v. Halter*, 417 N.W.2d 747, 750 (Minn.Ct.App. 1988). However, despite the need to "closely adhere" to the required forms, some discrepancies in the notice will not render it fatally defective. *Id.* at 751. The purpose of the cancellation procedure is "to give vendees notice of an impending cancellation and a reasonable period of time to redeem their interest." *Conley v. Downing*, 321 N.W.2d 36, 39 (Minn.1982). Ms. Haake has not argued that the notice was inaccurate or that it was defective in any way.[4] Even if the outstanding balance was somehow calculated in error, the failure to state the amount due is not fatal to a notice of cancellation because the vendee is presumed to know the contract terms and is not prejudiced by a mistaken amount. *Id.* The contract itself called for payment in full on September 1, 2011. The notice of cancellation informed Ms. Haake that she had not made that payment. She had 60 days from the date of service to cure the default. Instead, she filed bankruptcy. Mr. Rasmussen does not deny that at the time of filing she still had the right to cure. The question is what she could do with it.

Ms. Haake notes that courts have historically been troubled by the fact that this type of transaction holds the potential for highly inequitable results. For example, in *Butler* the property might have been worth as much as $1.2 million more than the amount due under the contract, and the debtor's default meant the loss of that equity. 552 N.W.2d at 229. Even this case hints at the problem, in that Ms. Haake made a $20,000 down payment and at least some of the monthly payments. In the context of a traditional foreclosure sale, she would be entitled to receive the net equity after payment of the balance due Mr. Rasmussen. Minnesota law, however, dictates that her default under the contract for deed causes title to revert to Mr. Rasmussen without regard to her potential equity position. The property—and her equitable title to it—are simply gone.

■■■■ Ms. Haake's suggestion is that there is an emerging trend among courts to acknowledge this inequity and grant debtors a greater range of redemption rights or other protections (perhaps even the requirement of judicial oversight before the vendor could terminate the contract). Were the Court to adopt such a perspective, she would propose a plan that restructures the obligation and avoids the forfeiture that would otherwise result. But the reality is that Minnesota *has* acknowledged the problems associated with contracts for deed and provided vendees with the right to cure under Minn.Stat. § 559.21 specifically to avoid arbitrary action by the seller. *See Butler*, 552 N.W.2d at 230 (the "potentially severe consequences" of cancellation of a contract for deed have been "ameliorated" by § 559.21).[5]

---

4. In fact, in her brief the debtor indicated that Mr. Rasmussen "rightfully" terminated the contract pursuant to Minnesota law. *See* Debtor's Brief, Docket No. 61, at p. 2.

5. The debtor cites *O'Meara v. Olson*, 414 N.W.2d 563 (Minn.Ct.App.1987), for the proposition that a vendee should be afforded an opportunity to redeem even beyond the statutory period. However, *Olson* involved the

As indicated previously, Ms. Haake's property rights are shaped by state law, and this Court cannot simply fashion substantive redemption rights where none otherwise exist. Her interest in the property is that of a vendee under a Minnesota contract for deed who defaulted and received a notice of cancellation from the vendor. Under Minnesota law, cancellation terminates the contract for deed if the vendee's default "persists past the period for cure of default." *Edina Development,* 370 B.R. at 900. She is left with one final argument: namely, that because the statutory 60–day cure period had not expired at the time she filed, she can still restructure the contract in a potential plan.

■■■ Here again, the worthwhile comparison is to a debtor who holds title pursuant to a traditional mortgage. In Wisconsin, for example, a debtor may utilize a bankruptcy plan to "de-accelerate" and reinstate a mortgage at any time during the foreclosure process, and this right persists until *confirmation* of the judicial sale of the property. *See In re Wescott,* 309 B.R. 308 (Bankr.E.D.Wis.2004). In both chapter 11 and 13 cases, the code prohibits plans from altering the rights of creditors whose only collateral is the debtor's homestead. *See* 11 U.S.C. §§ 1123(b)(5) and 1322(b)(2). However, de-acceleration of a homestead mortgage is not a prohibited "modification" of a claim secured by the debtor's principal residence, but is a "permissible and necessary concomitant of the power to cure

defaults." *In re Clark,* 738 F.2d 869, 872 (7th Cir.1984).

■■■ Because of this, debtors in Wisconsin frequently file bankruptcy after entry of a foreclosure judgment (and even after a foreclosure sale). They propose plans which reinstate the mortgage and provide for the "cure" of pre-petition arrears, and—presupposing that there are no other problems—the plans are confirmed. This ability to unravel the foreclosure process in a plan is founded upon the notion that the debtor still holds the right to redeem the property under state law. *Wescott,* 309 B.R. at 313 (quoting *Colon v. Option One Mortgage Corp.,* 319 F.3d 912, 920 (7th Cir.2003)). Likewise, a land contract vendee may have the ability to cure contractual defaults in a plan. *See In re Brown,* 249 B.R. 193, 194 (Bankr.N.D.Ill. 2000) (finding that an Illinois real estate installment contract—i.e., a contract for deed or land contract—could be cured up to the point at which the debtor "has no right under nonbankruptcy law to continue with the contract by paying the amounts in default").

As part of providing for "adequate means" of implementation, a chapter 11 plan may include provisions for the "curing or waiving of any default." 11 U.S.C. § 1123(a)(5)(G). The amount required to cure a default "shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1123(d). In this case, Mr. Rasmussen contends that the time to cure

---

*judicial* cancellation of a contract for deed, rather than a cancellation through the statutory process. The statutory process automatically affords the vendee with an opportunity to cure the default, and the statute must be "strictly followed" to protect the vendee from an arbitrary termination of the contract. *Id.* at 567. Judicial cancellation is an *alternative* to the statutory remedy that does not require

a notice of the right to cure and contemplates a "full hearing on the merits in open court," at which time a vendee who is ready, willing, and able to cure a default might be permitted to do so. *Id.* In either case, Minnesota courts will strictly enforce the cancellation if the vendee does not tender the amount in default when required.

expired, and the debtor has no further right to the property.

Under 11 U.S.C. § 108(b), if "applicable nonbankruptcy law" or an agreement fixes a period to cure a default and that period has not expired as of the petition date, the trustee (or debtor in possession) may still effectuate a cure by the end of the period or 60 days after the order for relief, whichever is later.[6] Mr. Rasmussen's argument is that under this statute, Ms. Haake had, at most, 60 days after the bankruptcy filing to cure the default under the contract for deed. The case was filed on March 14. The cure period expired on May 14, and the debtor did nothing to cure the default. Even the offer of adequate protection (which can hardly be construed as an attempt to "cure") was filed long after that date.

The challenge is how the ability to cure a default in a plan intersects with § 108(b). As the court observed in *Brown:*

> Curing a default has the effect of restoring the situation that existed prior to the default, thus canceling the other party's contractual remedies, such as acceleration of payments or forfeiture of the debtor's contractual interests, and allowing the debtor to continue making the required installment payments as though no default had occurred.

249 B.R. at 196. Neither § 1123 nor § 1322 expressly indicate that the ability to cure *through a plan* is limited by § 108(b), and the code seemingly permits debtors in reorganization cases greater latitude in effectuating the cure of a contractual default. *See Moody v. Amoco Oil Co.,*

734 F.2d 1200, 1215 (7th Cir.1984) (because § 365(d)(1) permitted debtors to assume an executory agreement at any time before confirmation, § 108(b) did not apply to the curing of a default under an executory contract); *Brown,* 249 B.R. at 199 (land contract vendee who retained the ability to cure default under state law could do so in a chapter 13 plan); *Wescott,* 309 B.R. at 311 (whether debtor may cure a default in a plan by de-acceleration of the debt or is required to redeem by paying the judgment in full is *not* governed by the contract or nonbankruptcy law).

According to the Eighth Circuit Court of Appeals, however, the notice of cancellation of a contract for deed under Minn.Stat. § 559.21 creates a cure period within the meaning of § 108(b), and the running of that statutory time period is *not* subject to the automatic stay. *In re Maanum,* 828 F.2d 459, 460 (8th Cir.1987) (finding that § 108(b) and § 362(a) are mutually exclusive, and "anything temporarily stayed" under the specific language of the first is not indefinitely stayed by the more general language of the second). The debtors in *Maanum* had hoped to propose a chapter 11 plan to cure the default and the court clearly recognized that the result left the debtors with only the § 108(b) period in which to cure the default before they "would lose their equitable interest in the land." *Id.* at 459.

The logical implication for the present case seems to be that under relevant Eighth Circuit precedent, Ms. Haake had at most 60 days from the date of the petition to cure the default reflected in the notice of cancellation. *Id.; Edina Devel-*

---

**6.** The debtor's suggestion that § 108(b) is only applicable in chapter 12 or 13 cases is inconsistent with linguistic analysis of the statute, as it is applicable to periods within which "the debtor" *or* "an individual protected under section 1201 or 1301" may cure or perform other specified actions. Essentially, this means the section applies to all debtors, regardless of chapter, *and* to individuals protected by the co-debtor stay of either chapter 12 or 13.

*opment*, 370 B.R. at 904 (debtor who attempted to cure in a *timely* manner was entitled to a determination that its rights under a contract for deed had not been canceled). That time period expired in mid-May without any effort to tender a cure. *See Dale v. Pushor*, 246 Minn. 254, 75 N.W.2d 595, 599 (1956) (noting the requirement that in order to avoid the cancellation of a contract for deed, the vendee must have tendered payment of the amount due within the statutory period and have the necessary funds available whenever payment is requested). As such, any remaining rights she had under the contract have terminated. *Walker*, 231 N.W. at 827.

 Even if § 108(b) does not limit Ms. Haake's ability to cure a default within the context of a reorganization plan, other provisions of the code act to prohibit the relief she seeks. Under 11 U.S.C. § 1123(b)(5), a plan may modify the rights of secured claims, "other than a claim secured only by a security interest in real property that is the debtor's principal residence." The language of § 1123(b)(5) is identical to that of § 1322(b)(2), the so-called chapter 13 "anti-modification" provision. It was added to the code in 1994 and was designed to "harmonize the treatment of home mortgage loans in chapter 11 and chapter 13." *In re Abdelgadir*, 455 B.R. 896, 901 n. 7 (9th Cir. BAP 2011); *see also In re Silva*, No. 09–29226–BKC–AJC, 2010 WL 431771, at *2 (Bankr.S.D.Fla. Feb. 2, 2010); *In re Van Eck*, 425 B.R. 54, 67 (Bankr.D.Conn.2010). As such, cases interpreting § 1322(b)(2) are instructive in understanding its chapter 11 counterpart. *Abdelgadir*, 455 B.R. at 901 n. 7.

In *Clark*, the court noted that § 1322(b)(2) was designed to prevent debtors from altering the size and timing of installment payments or modifying other provisions of the contract. 738 F.2d at 873

(quoting Bankruptcy Laws Commission's Report, H.R. Doc. 137, pt. 2, 93d Cong., 1st Sess. 205 (1973)). As this Court has also observed, the anti-modification provision precludes debtors from "proposing plan provisions which would unilaterally rewrite the terms of a home loan—for example, by reducing the principal balance to the current value of the home, lowering the interest rate, or providing for a new amortization schedule." *In re Wofford*, 449 B.R. 362, 364 (Bankr.W.D.Wis.2011). The Supreme Court has indicated that the provision's focus on "rights" is also important, and that those rights are "reflected in the relevant mortgage instruments." *Nobelman v. American Sav. Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). They include "the right to repayment of the principal in monthly installments over a fixed term at specified . . . rates of interest," as well as any other rights which were "bargained for by the mortgagor and the mortgagee." *Id.* at 329–30, 113 S.Ct. 2106.

 Prior to the 1994 amendments, a number of courts concluded that § 1322(b)(2) precluded debtors from proposing plans which attempted to restructure (or "cure") mortgages which had fully matured or ballooned prior to the bankruptcy. *See In re Seidel*, 752 F.2d 1382 (9th Cir.1985); *In re Fuentes*, 167 B.R. 901 (Bankr.E.D.Mo.1994); *In re Manocchia*, 157 B.R. 45 (Bankr.D.R.I.1993). In an apparent response, Congress enacted § 1322(c)(2). This section provides that a claim which is secured by a debtor's home *may* be modified through a chapter 13 plan if the last payment due under the original payment schedule comes due "before the last payment under the plan is due." This means that a home loan can be modified if the obligation matures before the petition is filed or during the term of the plan. In an ironic twist to the intend-

ed "harmonization" of home loan treatment, however, there is no corollary to § 1322(c)(2) for chapter 11 cases. *See* 7 *Collier on Bankruptcy* ¶ 1123.02[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (noting that at the same time that Congress added § 1123(b)(5) it also created exceptions to the anti-modification provisions of chapter 13, "so that it is now more likely that a home mortgage can be modified in chapter 13 than in chapter 11").

 Under Minnesota law, Mr. Rasmussen holds a "vendor's lien" on Ms. Haake's home. *Butler*, 552 N.W.2d at 229. No other collateral secures his claim. The last payment under the contract for deed was due before the petition date. Any proposed plan treatment would necessarily alter the *timing* of payments called for under the contract. One of the "rights" held by a secured creditor is the schedule of payment (or, as the Supreme Court put it, "the right to repayment . . . over a fixed term"). *Nobelman*, 508 U.S. at 329–30, 113 S.Ct. 2106. The Court cannot simply import the language of § 1322(c)(2) into § 1123(b)(5). As such, there is no statutory exception which would permit a chapter 11 plan to modify claims secured by the debtor's principal residence, even if those obligations matured prior to the petition date and might be subject to modification in chapter 13. Even if she still retained the right to cure, the code precludes her from modifying (or extending) the due date of the principal balance owed under the contract for deed.

 The code does not define what constitutes "cause" for relief from the automatic stay, and courts must determine whether relief is appropriate on a case-by-case basis. *State Bank v. Miller (In re Miller)*, 459 B.R. 657, 676 (6th Cir. BAP 2011). In this case, there is simply no prospect that Ms. Haake will be able to reorganize or restructure Mr. Rasmussen's claim. Sufficient cause exists to lift the stay so that he may proceed in state court to effectuate the termination of the contract for deed.

Accordingly,

IT IS ORDERED that Mr. Rasmussen's motion for relief from the automatic stay is granted. The stay is lifted to permit him to exercise his remedies under Minnesota law regarding the cancellation of the contract for deed.

IT IS FURTHER ORDERED that the debtor's motion to determine adequate protection is denied as moot.